## Gregory's Heirs *vs* Ford, &c.

EJECTMENT.

APPEAL FROM THE SHELBY CIRCUIT.

*Case* 103.

*Femes covert. Champerty. Adverse possession. Conveyances.*

JUDGE MARSHALL delivered the opinion of the Court.

June 19.

THIS action of ejectment was brought by the heirs of Caroline Gregory, as lessors, to recover part of a tract of 1,300 acres of land, patented to George Muse, and by him devised to his two daughters, Kitty and Caroline. The land in contest had been conveyed, in 1808 and 1815, by deeds purporting to be the deeds of William Gregory and Caroline his wife, in right of the latter as a devisee of said George Muse. And except as to the particular authentication of these deeds, and as to the extent of the possession acquired under them, the general ground on which a recovery was claimed by the lessors, is the same as in the cases of *Drane* vs *Gregorys*, (3 *B. Monroe*, 619,) and *Chrisman* vs *Same*, (4 *B. Monroe*, 474,) to which cases reference is made for the preliminary facts, and for a statement of the principles applicable to the case of an action brought by the heirs of a *feme covert* for her land, which had been conveyed by her husband, by deeds ineffectual to pass her right, except during his life. The same principles were discussed and settled in the cases upon Mrs. Shackleford's claims against the alienees of her husband, reported in 3d, 4th, 5th, and 9th *Dana*, in *Applegate* vs *Gracy*, (9 *Dana*,) in *Shemwell* vs *Taylor, &c.* (4 *B. Monroe*, 575,) and in *Murray* vs *Fishback*, at the present term.

The doctrine established by these cases is, that the person acquiring possession of the wife's land by alienation in fee of the husband alone, and under the wife's title, is bound, upon the death of the husband, to restore the possession to the wife or her heirs, and that the same obligation devolves upon the successive tenants who may receive the possession thus in the first instance acquired from the husband; that such possession, though held

The case stated.

5bm471
d105 194

5bm471
111 146

5bm471
113 937
115 432
115 647

5bm471
136 27

Any person acquiring possession of the lands of a *feme covert,* by alienation in fee of the husband, and under the title of the *feme,* is bound, at the death of the husband, to restore the possession to the

GREGORY'S H'RS.
vs
FORD, &c.

wife or her heirs, and the same obligation devolves upon all subsequently coming into possession under her title.

The champerty law of 1824, does not apply to a case where the title by which the land is sought to be recovered is the same as that under which possession was taken, and is still held; it is not an adverse possession.

When numerous and complicated instructions are asked for by one party and are given, and instructions asked for by the other party, it is not sufficient that the Court give them *subject to be qualified by the instructions given at the in-*

under successive deeds is not adverse to the title of the wife or her heirs, so as that any statute of limitation can commence running upon it against them during the life of the husband; and that their right to the possession after that event, if asserted within the [time allowed, which is now three years, cannot be resisted either on the ground of prior adverse possession, or of an outstanding elder title, or of an adverse title acquired during the continuance of such possession.

These principles, however, as well as the further principle decided in *Chrisman* vs *Gregory's heirs*, (4 *B. Monroe*, 480,) and involved in this case, that the right of recovery is not affected by a champertous agreement by one or more of the lessors for the carrying on of the suit, apply only so far as the possession was originally acquired from the husband, under his deed or other contract, not binding on the wife, or her heirs after his death; and so far as the possession thus acquired has been transmitted to the defendants; so far too, as the possession has been thus acquired from Gregory, under the title of his wife, as a devisee of George Muse, and has come to the present defendants, unbroken by eviction or surrender to the holder of the title under which it was taken, we are of opinion that they were estopped from denying in this action, that she was the true devisee. This is but an application to that particular link of her title, of the general principle which precludes them from denying the tttle under which they derived the possession. Whether, if they showed title in themselves from another Caroline Muse, they might not, on the ground of fraud, be relieved from the estoppel, we need not decide.

The instructions given by the Circuit Court on motion of the plaintiff, seem to be in conformity with these principles, except in two particulars, one of them goes, as we think, too far in intimating that an adverse title purchased in by any one of the successive tenants holding the possession as above supposed, enures to the benefit of the lessors. We apprehend that after the possession is restored, such title might be asserted against the lessors by the person holding it, though it may have been acquired by him or his predecessor, under whom he derives it,

GREGORY'S H'RS.
*vs*
FORD, &c.

*stance of the other party*, without designating the qualification intended.

while in possession under Mrs. Gregory's title. But this point is immaterial in the present case, and we proceed to state the other, which seems to be material, and that is, that the instructions asked for by the plaintiff, are said in the bill of exceptions to have been given, "with the qualifications contained in the instructions given on the part of the defendants;" as the instructions given for the defendants, are numerous and complicated, this general reference to them as qualifying instructions apparently given for the plaintiff, without designating the particulars in which they are intended to be qualified, or pointing out the particular instructions which conflict with each other, is objectionable as wanting that certainty which is requisite to enable the jury correctly to apply the law to the facts before them. But without dwelling upon this objection, of which even if the instructions given for the defendants were correct, the plaintiff might have some cause to complain, since the jury might be mistaken in deciding which of the instructions given for the plaintiff was intended to be qualified, and which was to stand without qualification, while they might naturally be led to distrust the whole of them, and to regard the defendants' instructions as containing the only safe guide, we are of opinion that several of the instructions given for the defendants are erroneous.

Before noticing these instructions, we should remark, that as the jury found for the defendants as to the whole of the land in contest, their verdict must have been founded upon some principle or principles applicable to the whole, and can only be sustained upon grounds equally extensive. The land in contest is covered by three deeds, purporting to be from Gregory and wife to Daniel Mitchell, under whom the defendants claim. The first of these deeds is for 252 acres, and bears date in 1808, but was not recorded until August, 1815, when it was proved as to Gregory, by two subscribing witnesses, and certified to have been acknowledged on privy examination, by Mrs. Gregory. The second is for an adjoining parcel of 84 acres, bears date in May, 1815, and was recorded in the same month, on proof as to Gregory by two witnesses, and on the certificate of the proper Clerk, that Caroline

GREGORY'S H'RS.
vs
FORD, &c.

Gregory had acknowledged it before him, and that *she
being examined by him privily and apart from her hus-
band, declared to him that she did freely and willingly
seal and deliver the said indenture, and wished not to re-
tract it.* The third, bearing date on the 2d day of June,
1815, is for 336 acres, and includes the same land that
is conveyed by the other two, and was recorded in time,
but the certificate of acknowledgment by Mrs. Gregory,
imports a relinquishment of dower only. The Court de-
cided that the deed for 84 acres was sufficiently authenti-
cated to pass Mrs. Gregory's entire estate, but that the
other two were, for want of such authentication, ineffec-
tual. Assuming for the present, that these decisions are
correct, still the validity of the deed for 84 acres, could
not justify the verdict, as a portion of the land in contest
is outside of that deed, and within the deed for 252 acres,
which was decided to be invalid as to Mrs. Gregory. We
look, therefore, for some other ground for the general ver-
dict against the plaintiffs.

And as it appears clearly and without contradiction,
that Daniel Mitchell originally entered and held posses-
sion of a portion of the land under Gregory and wife, as
early as 1798, and that if the deed for 252 acres be inva-
lid as to Mrs. Gregory, he was, so far as that deed cover-
ed the possession thus acquired, placed under the estop-
pels above stated, it follows that the defendants, who set
up no title under any other Caroline Muse, could, to that
extent, have had no legal ground for resisting the claim of
Mrs. Gregory's heirs to the possession. It is true that
Daniel Mitchell, in 1816, when he was in possession
under his deed from Gregory, obtained a deed for 168
acres of the land included in Gregory's deed, from J. F.
Robinson, who was in possession as devisee of James
Robinson, who had entered as early as 1794, on the in-
terference between Muse's patent and the younger patent
of May, claiming under the latter, and in 1796, received
a deed purporting to convey May's title. But assuming
that as to the whole or a part of this 168 acres, the pos-
session was acquired by Mitchell under his deed from
Robinson, and not under Mrs. Gregory's title, and that as
to so much there could be no recovery in this action,

still as the possession thus acquired did not extend to the whole of the land in contest, nor even to all of that which is not covered by the deed for 84 acres, and as there is no dispute that the lessors are the heirs of Mrs. Gregory, the plaintiff was entitled, upon the facts and the law, to a recovery to some extent; and this conclusion is not affected by the fact that some undefined part of the land in contest, to the extent of 20 or 30 acres, is covered by the elder patent of Barbee, &c. Even if the defendants had title under that patent, there is no evidence that any possession was acquired under it, but any inference of that sort is precluded by the fact that the possession had been held by Mitchell under Gregory, and by Robinson under May, long before any conveyance of Barbee's title to Mitchell. Nor is there any evidence that Gregory's deed for 84 acres and Robinson's deed for 168, cover all the land in contest, which seems to be about 285 acres; and yet the jury must have come to this conclusion, or they must have supposed that these two deeds, together with the deed professing to convey title under the patent of Barbee, covered and protected the entire possession sought to be recovered, or they must have based their verdict on the opinion that Caroline Gregory, the ancestor of the lessors, was not the Caroline Muse to whom this land had been devised by George Muse, which, so far as the possession was acquired under the deed of her husband, the defendants could not deny; or they must have concluded that the lessors were not heirs of Mrs. Gregory, as they are clearly proved to be.

The verdict would seem then, to be unsustained even if the instructions were right. But the Court instructed the jury as to the land of which the possession was acquired from Robinson, holding under May's patent, that the subsequent possession of Mitchell, who was the grantee of Gregory of the same land, before he bought from Robinson, might be added to the previous possession of Robinson, to make up the bar of twenty years, or might of itself constitute a bar; and that if there had been twenty years possession under the patent of May, before the suit was commenced, this was sufficient to bar the plaintiff. It seems to us that there could be no bar by adverse

One who enters under a conveyance in fee from the husband of the lands of the wife, cannot, by buying in another title to the same land, defend himself under such after acquired title, against the suit of the wife or her heirs, after the death of the husband, instituted to recover the possession. An adverse title

GREGORY'S H'RS.
*vs*
FORD, &c.

purchased in by
one so possess-
ed, ceased on
the purchase to
be adverse.

possession under the statute of limitations during the life of Gregory, except so far as the bar had become complete in favor of Robinson, when he transferred the possession to Mitchell. The extent to which the bar may have been then perfect, it is not necessary now to define. Muse's patent was older than May's. Gregory, and after him Mitchell, were in possession within the interference and under the elder patent, long before Robinson, who had first entered upon the interference, had been there twenty years. In fact, he had been there not more than three or four years, and twenty years from the commencement of his possession had not expired when Gregory conveyed 252 acres of the land to Mitchell, in 1808. Under this deed Mitchell had the right of entry as to all the land conveyed by it, and in possession of Robinson, unless some of it may have been covered by an elder patent, which does not appear, and he might have recovered the possession by ejectment. It would be going at least far enough to say that to the extent that by his laches he permitted Robinson's possession under the junior patent to mature into title, he could, after his purchase from Robinson, rely upon that previous possession and title, to bar the claim of Mrs. Gregory or her heirs, whose better title he had held while the possession was maturing. But at any rate, so far as the bar was not complete by Robinson's possession adverse to Mitchell, the possession under May's patent being united with the title held by Mitchell under Muse's patent, could not remain adverse to it afterwards; and the limitation must, so long as this state of things continued, have ceased to run in favor of the title under May and against that under Muse or Gregory. The only person who had the right of possession and of action under the title of Muse or Gregory, having acquired also the possession which had been previously held under May, the right of action was necessarily merged in the actual enjoyment, and there being no longer any possession separate from the title, and no person to sue or be sued for the possession, the statute of limitations, which can only run in favor of a possession and against an outstanding right of action for the possession, could not possibly operate so as to strengthen Mitchell's

possession under May against Mitchell's title under Gregory. If Mitchell had not been invested with Gregory's title when he obtained the possession, he might have been immediately sued by Gregory, (as Robinson himself might have been before,) and there having been no interruption of the possession adverse to Gregory's title, nor of the opportunity of suing upon that title for the possession, the statute which had commenced running in favor of Robinson, would have continued to run in favor of his successor and vendee, Mitchell. But as Mitchell, or those claiming under him, had the title of Gregory when the possession was obtained, from the very nature of the thing, the possession could not be hostile to that title, and the statute could not run as between them; and if the persons in possession also held under May's title, the same principle would apply with respect to that title.

The consequence of this state of things, no matter how long it lasts, must be that neither of these titles could gain strength against the other, by reason of a possession held under both. And that upon the cessation of the tenants interest in one of them, if he is under no estoppel which binds him to surrender the possession to the holder of that title, he can not resist it by setting up against it his own possession, while the same title was in him, but so far as he attempts to resist on the ground of possession, can only rely upon that which had existed prior to the union of that title with the possession. Conceding then, as we are disposed to do, that so far as Mitchell acquired the possession from Robinson, and not from Gregory, he and those claiming under him, are under no estoppel whatever, the contest to the extent of that possession, stands now upon substantially the same ground as if after the date of the last deed from Gregory to Mitchell, and before the latter had acquired the title and possession of Robinson, Gregory and wife had both died, and this action had been commenced by the heirs of Mrs. Gregory against Mitchell, on the very day that he obtained the possession from Robinson—and on better grounds than if it had been commenced against Robinson on the same day, before he had made the transfer to Mitch-

ell, so far the recitals of the deeds from Gregory to Mitchell would be stronger evidence against Mitchell than against Robinson, of the fact that Mrs. Gregory was the devisee of George Muse.

Assuming, then, that the contest so far as the possession was not derived from Gregory, is between the lessors claiming under the elder patent of Muse, and the defendants claiming under the prior patent of May, and depends upon the title and possession as they existed at the date of Robinson's transfer to Mitchell, and assuming that Caroline Gregory was the devisee of George Muse, the case, as stated most strongly for the defendants is, that the junior patentee having entered within the interference claiming the whole, the senior patentee afterwards, within three or four years, entered also within the interference claiming the whole ; and each party, by himself or those claiming under him, having continued his possession and extended his close until more than twenty years after the first entry, the claimants under the elder patent, then commence their action of ejectment against the tenants in possession under the junior patent. In such a contest, the elder patent must, of course prevail, except so far as possession may have been held for twenty years under the other. The first question, then, would be as to the effect of the entry of the senior patentee upon the possession acquired by the previous entry of the junior patentee. And next as to the effect of the subsequent enlargements of the close of the latter. Upon well settled principles, the possession of the junior patentee would, after the entry, and during the possession of the elder patentee, be limited to his actual close, and he could succeed in the action only to the extent that he had held possession by actual close for twenty years, or for seven years under the statute of 1809. But the deed to Mitchell having been made by Gregory and wife, when there was no bar under either statute, the act of 1840, (3 *Stat. Laws*, 413,) allows three years after Gregory's death, for commencing this action, and the contest as between the two adverse titles, is thrown back to the date of the deed.

The rule that an entry of a senior patentee upon a    But further than this, and upon the same principles, assuming what is stated by the Surveyor as a witness in

the case, that Barbee's patent does not cover any part of the interference between that of Muse and of May, then Gregory by his entry within the interference, and within three or four years after that of Robinson, acquired the possession, except so far as Robinson had it, by actual close, and so long as the possession was held by Gregory or by Mitchell under him, its extent remained unaffected by the mere continuance of Robinson in possession, and was only diminished as Robinson from time to time extended his close; so that the possession of Mitchell under Gregory's first deed of 1808, must be considered as extending to all the land embraced therein, which was not actually enclosed by Robinson at its date, if, as may be presumed, Mitchell was then in possession, or at the time when Mitchell took possession under the deed, if he was not in possession at its date. The same is true with regard to the deed for 84 acres, made in 1815. It follows, that as Mitchell acquired from Gregory the possession of the land embraced in these deeds, except so far as Robinson had it actually enclosed when Mitchell got possession under the deeds respectively, · if either of those deeds is invalid as against Mrs. Gregory and her heirs, Mitchell, and those claiming under him were, and are, as to all the land embraced in such deed, except so much as was actually enclosed at the period just designated, under the estoppal already pointed out, as growing out of the fact of the possession having been acquired under Mrs. Gregory's title by the sole act of her husband.

We have gone farther than was necessary to show the incorrectness of the instruction under consideration, but a full development of the principles involved, may be necessary for the future trial of the case. With regard to the elder title of Barbee, as there is no evidence that any possesson was acquired under that title, the acquisition of the title itself by Mitchell, while in possession under Gregory, could not change the character of his possession, so far as Mrs. Gregory or her heirs are concerned, nor relieve the defendants from the estoppel, nor avail them to any purpose in this suit, and the instruction upon that subject seems to be erroneous.

GREGORY'S H'RS.
*vs*
FORD, &c.

junior patentee, operates as a possession of the senior patentee to the extent of his patent boundary, not actually enclosed by the junior patentee or those claiming under him, recognized.

The marriage of a female lessor of plaintiff, after the demise, does not affect the right of recovery in ejectment, though it is proper that it be suggested on the record. If the demise be after the marriage, there can be no recovery upon it.

The jury cannot find against that which appears by written evidence, in favor of a party who produces such evidence, and it is error for the Court to instruct them that they *may* do so.

When a question is proper for the consideration of the jury, all evidence legal in its character, conducing to the proof or disproof of it should be admitted.

It was also erroneous, in our opinion, to instruct the jury, that if one of the lessors was a *feme covert* at the time of filing the declaration, there could be no recovery on the demise laid in her name as a *feme sole.* If the demise had been dated after her marriage, it would have been void, and there could have been no recovery upon it. But having been dated before her marriage, the defect is merely in the form of the suit, and as such, is matter which may be corrected by suggestion, or the demise might be struck out on rule or motion, if the husband does not make himself liable for costs.

The last instruction given for the defendants, erroneously assumes, that the jury might find that Mitchell had acquired possession of no part of the land in contest, from Gregory and wife.

The question of champerty can be relied on only to the extent that the defendants are free from the estoppel; and the same is true with regard to the question, whether Caroline Gregory was the devisee of George Muse. As to which question, even so far as it is an open one, the recitals contained in the deeds from Gregory to Mitchell, must be regarded as furnishing very strong, if not conclusive evidence, and especially when taken in connection with the fact, that before the year 1800, Gregory and wife went on the land, had it divided, took possession of half of it, and transmitted that possession, with Gregory's title, to others, by whom it has been held ever since, without any claim in the name of any other Caroline Muse. If the evidence of loose declarations, said to have been made by some of the lessors, or by Gregory and wife, many years ago, that she was the daughter of Battaille Muse, could be entitled to any weight against these circumstances, and should not have been entirely excluded, on the motion of the plaintiff, the Court should at least have permitted the plaintiff to read to the jury the record of the appointment of Wm. King as administrator, with the will annexed, of George Muse, made in 1790, and of his settlement made in 1811, with the accompanying vouchers, which contained recognitions of William Gregory as a legatee (as he is therein called,) of George Muse. And also the copy of Battaille Muse's will, and the pro-

bate thereof, in 1803, certified from the County Court of Frederic county, in the State of Virginia, in the manner required by the act of 1842, (3 *Stat. Laws,* 585,) and by the act of 1820, (2 *Stat. Laws,* 1548,) which recognized Caroline Gregory as the testator's sister, and when compared with the will of George Muse, contained evidence that Battaille was the son of said George, and which moreover makes no mention of any daughter of the testator named Caroline. The Court erred in rejecting these documents. It is scarcely necessary to say, *that the question whether the lessors of the plaintiff were the heirs of Caroline Gregory, was entirely an open one,* and material to their right of recovery, as to the whole extent of their claim. But the instruction on that subject, might, in connection with the instances just referred to, have misled the jury into the belief that the question as to the identity of Caroline Gregory and Caroline Muse, the devisee, was alike open, and to the same extent.

With regard to the deed for 84 acres of land, the authentication of which has been stated, it seems not to have been disputed in the Circuit Court, that it was valid as to Caroline Gregory. And upon consideration of the statutes of conveyancing, of 1748, 1785 and 1796, we are of that opinion. The certificate of the Clerk does not state that "the deed was shown and explained" to Mrs. Gregory on her privy examination, which in strict propriety, it should have stated. But although the two last mentioned statutes expressly require that the deed should be shown and explained, no statute requires that this should be expressly stated in the certificate. The statutes direct the Clerk what he is to do in making the privy examination, and require the fact of privy examination, but not the manner or particulars of it, to be certified. As the fact of privy examination, and the declaration of the *feme,* that she freely and voluntarily sealed and delivered, &c. are certified, we think it should be implied that the deed was shown and explained. First, because the Clerk should be presumed to have done his duty in making the examination; and again, because it should not be presumed that he would certify her declaration that she had freely and voluntarily sealed and delivered the deed,

*Deed for 84 acres is valid, though it does not state that it was "shown and explained" to the feme on her privy examination, which though required to be done, no statute requires that it shall be so certified by the clerk, that provision is directory [to the clerk—Holding to established principles, the Court is disposed to construe certificates of acknowledgments liberally to sustain titles.*

without ascertaining that she understood what she had done. We know of no case in which the deed of a *feme covert* certified as this is, has been rejected. If there has been any such, it would seem to have passed *sub silentio*. And while we are bound to adhere to the established principles, that the deed of a *feme covert* must be recorded, (or lodged for record) within the time prescribed by law for recording deeds, to be computed from the time of its delivery, and also that a certificate of acknowledgment showing that the *feme* had relinquished her dower only, is wholly insufficient upon a deed professing to convey her inheritance, we are disposed to construe the statutes and the certificates liberally, with a view of sustaining rather than of destroying titles derived from *femes covert*.

The case of *Nantz* vs *Baily*, (3 *Dana*, 111,) may seem to have a bearing against the conclusion, that the certificate now in question is sufficient. But in that case the certificate was deemed sufficient, though it did not state that the deed had been shown and explained to the *feme*, and it was sustained not merely by inferences drawn from its own language, but also upon the presumption that the Clerk understood and did his duty. Besides, although some portions of the argument contained in that opinion would indicate that the certificate should show explicitly that the deed had been understandingly as well as willingly acknowledged, the Court also uses the following clear and unambiguous language, (page 116:) "The act of 1796 has not prescribed any form for the certificate. It prescribes the duty of the examining officer, and is so far directory merely. But all that it requires to be certified and recorded, is that the wife was examined privily and apart from her husband, and thereupon declared that she voluntarily executed the deed." The certificate now before us states, in addition, that she declared she did not wish to retract it. And although it omits to state her consent that it may be recorded, yet as this is the legal and proper consequence of what is stated as having been declared by her, it would seem to be formal only, and not indispensable. It was not stated in the certificate in the case of *Nantz* vs *Bailey*. The case of *Hughes* vs *M'Kinney*, (5 *Monroe*, 41,) dispenses

even with any express statement of the privy examination, the certificate in that case stating only that the wife was examined *as the law directs.* And although that case may have gone too far, it may be referred to as showing the liberality with which these certificates have been view. ed—a liberality which is due in a greater degree to those certificates which preceded than to those which have followed the instructions on the subject, promulgated under the authority of this Court, and inserted in the Digest of the Statute Laws furnished to all the Clerks of the Commonwealth. But the certificate of Mrs. Gregory's acknowlegment upon the deed of 1808, for 252 acres, is in the same form as that which we have just been considering. And it is suggested, that if the verdict and judgment for the defendants cannot be sustained, upon other grounds, it should be sustained upon the ground that this deed certified as to Mrs. Gregory on the 4th of August, 1815, and proved as to Gregory on the 7th, by two subscribing witnesses, and admitted to record on the same day, should be presumed never to have been delivered by the grantors or either of them, until the 3d of the same month, and that as the deed would thus have been recorded within the proper time after the delivery, it is good, and passes the title of Caroline as well as of William Gregory. The 3d of August is assumed, because that is the date of a memorandum indorsed on the deed, signed by Mitchell, and importing that he on that day "agreed to exonerate the aforesaid William Gregory from all and every claim of whatsoever nature, except the claim of the said Gregory and his representatives, as having descended from George Muse, deceased, Caroline Muse." This memorandum was attested by two witnesses, who being also two of the four who attested the deed, proved the deed as to Gregory on the 7th, and as the Clerk's certificate imports, also proved the memorandum to be his act. There is also a certificate on the deed, bearing the same date with the deed, and made by the proper Clerk, that the deed was proved on that day to be the act, &c. of Gregory, by one of the subscribing witnesses, which last certificate would tend to corroborate the presumption arising on the face of the deed, that it had been deliver-

ed by Gregory at least on the day of its date. And although it may be proved that a deed was delivered on a day different from that on which it purports to have been executed, we certainly do not feel authorized to infer from any or all of the facts appearing on this deed, or in the record, that it had not been delivered by Gregory on the day it bears date. And even if it could be inferred to have been delivered for the first time, on the 3d of Aug. 1815, we should not, unless this were the necessary and conclusive inference, be authorized to assume it, when it had not been passed upon by the jury, nor litigated between the parties; but it seems rather to have been conceded by all, on the trial, that this deed was invalid. So far from the inferrence of non-delivery until August, 1815, by Gregory, being necessary and conclusive, we think it is not authorized, but is negatived by the facts appearing on the deed and in the record. Whether it might not be inferred, that on the 3d of August, something was done by the parties to perfect the title in Mitchell, as intended to have been conveyed by this deed, and whether for this purpose, and to give effect to the execution of the deed at that time by Mrs. Gregory, and in consideration of the memorandum then executed by Mitchell, as well as of the original motives of the deed, Gregory may not then have re-delivered it, is also a question, the affirmative of which could not be assumed by the Court, in the present attitude of the case. But as the evidence certainly conduces to prove that something was done about the 3d of August, and at any rate on the 4th, for the purpose of giving effect to the deed, we deem it proper to say, that although it is laid down that a deed cannot take effect by every delivery, and if it take effect by the first delivery, the second delivery is void; and although under our statutes, as heretofore construed, a delivery by Gregory in 1808, and a subsequent delivery by Mrs. Gregory, in 1815, would not, though properly certified, authorize the subsequent recording of the deed, so as to pass Mrs. Gregory's estate, still, as the deed even if delivered by both in 1808, certainly did not, for want of timely authentication and recording, take effect according to its intent and purpose clearly expressed and within the power

of the parties, so that its execution then was imperfect, and as to Mrs. Gregory, there was no valid delivery at that time, we are of opinion that the deed might be perfected by the subsequent delivery of both, and that if recorded with the proper certificates, within due time after such subsequent delivery, it is effectual to pass the title and interest of both, according to its tenor.

The effect of the attempted derivation of title from the co-devisee of Caroline Muse, was decided in the cases of *Drane* vs *Gregory's heirs,* and *Chrisman* vs *Same,* above referred to, and need not now be noticed.

Upon the whole, we are of opinion, that the law of the case was not properly expounded to the jury, in the instruction given, and that the verdict cannot be sustained. Wherefore, the judgment is reversed, and the cause remanded for a new trial, on principles consistent with this opinion.

*B. & A. Monroe* for appellants: *T. P. Wilson and Harlan & Craddock* for appellees.