## CALEB H. PAINE *et al. vs.* ELIJAH C. BAKER.

Under a statute which provided that, in every case of a deed executed by husband and wife to convey the wife's realty, "the wife acknowledging such deed or instrument shall be examined privily and apart from her husband, and shall declare to the officer taking such acknowledgment that the deed or instrument shown and explained to her by such magistrate is her voluntary act, and that she doth not wish to retract the same," an acknowledgment was certified to as follows by the magistrate who took it: "Personally appeared S. A. J., and A. J., wife of said S. A. J., to the within and foregoing written instrument, and severally acknowledged the same to be their free and voluntary act and deed, hand and seal, the said A. J. having acknowledged separate and apart from the said husband, as the law directs, and that they did not wish to retract the same."

*Held*, that the acknowledgment was fatally defective.

*Held*, further, that the statutory provision requiring the deed to be "shown and explained" to the married woman was mandatory, and that the omission from the magistrate's certificate of a statement that the deed had been "shown and explained" to the married woman was fatal.

A., by fraud and deception, obtained a deed of realty from B. B., after learning the deceit practised, ignored the deed to A., and conveyed the same realty to C.

*Held*, that C. could maintain a bill in equity against A. to annul B.'s deed to A. without making B. a party to the bill.

BILL IN EQUITY to set aside certain conveyances of realty as fraudulent, and for an injunction. On demurrer to the bill.

*July* 18, 1885. DURFEE, C. J. The case as made by the bill which is demurred to is as follows, to wit: On November 3, 1825, Samuel A Jacoy and Amey A. Jacoy, his wife, in her right, she being one of four children and heirs of Zuriel Waterman, deceased, gave to her brother Zuriel, jointly with the other heirs, except said Zuriel, a quitclaim deed of all her right, title, and interest as heir in about one hundred and forty acres of land belonging to her father at his decease.. The deed, however, was acknowledged as follows, to wit: "Warwick, November 12th,

1825. Personally appeared Samuel A. Jacoy, and Amey Jacoy, wife of said Samuel A. Jacoy, to the within and foregoing written instrument, and severally acknowledged the same to be their free and voluntary act and deed, hand and seal, the said Amey Jacoy having acknowledged separate and apart from the said husband, as the law directs, and that they did not wish to retract the same. Before me," etc. Afterwards, Zuriel Waterman, the grantee in said deed, sold and conveyed said land to Philip Paine, grandfather of the complainants, who, after disposing of a portion of the land, died intestate in 1856, leaving Philip S. Paine, the father of the complainants, his only child and heir. Philip S. Paine, after selling portions of the land, died intestate August 10, 1870, leaving the complainants as his only heirs at law. Among the portions sold by Philip S. Paine was a lot of nearly three acres, sold to Julius Baker, the father of the defendant. In 1874, the defendant, having succeeded to said lot, obtained from the heirs of Amey Jacoy, then deceased, quitclaim deeds of all their right, title, and interest in said lot. Later, in 1875, the defendant obtained from the Jacoy heirs, for a nominal consideration, quitclaim deeds of all their right, title, and interest in the entire tract of land described in the deed to Zuriel Waterman. The bill charges that the defendant obtained the last mentioned quitclaim deed from the Jacoy heirs by representing to them that, as he had bought lands included in the deed to Zuriel Waterman, and claimed title thereunder, he desired to quiet the title to those then in actual possession, and to perfect his own title, so that he might be enabled to borrow money on the security of his own title, and by expressly representing to them that it was not his purpose to disturb the heirs of Philip S. Paine in their occupation, and that but for these representations he would not have obtained the deeds; the only purpose of the Jacoy heirs being to confirm the title intended to be conveyed to Zuriel Waterman in 1825 by their ancestor, Amey A. Jacoy. The bill charges that the procuring of the deeds was fraudulently contrived by the defendant for the purpose of ousting the complainants from their possession, and that, in pursuance of this purpose, the defendant, on March 5, 1883, commenced an action of trespass and ejectment against the complainants in the Supreme Court in Providence County, in

the names of the Jacoy heirs, which action is still pending.  The bill also alleges that the Jacoy heirs, when it came to their knowledge that the defendant had commenced said action in their names, repudiated the same, and thereupon conveyed by quitclaim deeds all their right, title, and interest in the premises, described in the deed of 1825, to the complainant, Caleb H. Paine, who accepted said conveyance for the purpose of quieting and confirming the title of the complainants under said deed. The prayer of the bill is that the defendant may be enjoined from prosecuting his action at law ; that the deeds last procured by him from the Jacoy heirs may be decreed to be fraudulent and void ; that he may be compelled to release his interest under them to the complainants ; and for general relief.

The right of the complainants to relief rests solely on the assumption that the deed from Samuel A. Jacoy and Amey A. Jacoy to Zuriel Waterman was ineffectual to pass the title of Amey A. Jacoy ; for, if her title passed, the deeds from the Jacoy heirs to the defendant were mere nullities, and this suit is wholly unnecessary.  The first question, therefore, is, whether the title of Amey A. Jacoy passed by the deed to Zuriel Waterman.  The decision of this question depends on the sufficiency of the acknowledgment.  Under the statute as it existed in 1825, it was competent for a man and his wife to convey her real estate by their joint deed, subject to the following provision, however, namely : "In every such case, the wife acknowledging such deed or instrument shall be examined privily and apart from her husband, and shall declare to the officer taking such acknowledgment that the deed or instrument *shown and explained to her* by such magistrate is her voluntary act, and that she doth not wish to retract the same."  The certificate of the acknowledgment of Amey A. Jacoy does not show that the deed was *shown and explained to her* by the magistrate.  The question is, whether the omission is a fatal defect.

The question is one which has been much mooted at the bar. It has been once or twice presented to the court, but not decided. *Lippitt* v. *Huston*, 8 R. I. 415 ; *Kavanaugh* v. *Day*, 10 R. I. 393, 397.  It is said the omission is of frequent occurrence, especially in the earlier deeds, and that, if necessary, we ought, for

the security of titles, to apply the maxim, *communis error facit jus.* We are not convinced of that, though we have no doubt that the omission is common enough to make it our duty to be circumspect. There are a few cases under similar statutes which hold that it is not necessary for the certificate to show that the deed was shown and explained. *Gregory's Heirs* v. *Ford,* 5 B. Mon. 471, 481 ; *Nantz* v. *Bailey,* 3 Dana, 111 ; *Tod* v. *Baylor,* 4 Leigh, 498 ; *Chestnut* v. *Margaret Shane's Lessee,* 16 Ohio, 599 ; *Stevens* v. *Doe dem. Henry,* 6 Blackf. 475. But in these cases the chief ground of decision was that the statutes, while they were express that the other matters should be certified, made no mention of this. Our statute does not expressly prescribe any certificate. It is well settled, however, that an acknowledgment, to be good, must be certified, and that in all other respects the certificate must show a complete compliance with the statute. Why must it not show it in this respect ? Clearly it must show it unless there is some good reason why it may omit to show it. The complainants find such a reason in the manner in which the direction to show and explain is given ; the direction being expressed, as it were, incidentally, rather than in the shape of a direct command. They argue from this that it was not intended to be mandatory, but only directory, and, therefore, that a compliance with it is not indispensable. The argument is ingenious, but it is too obviously ingenious to be entirely satisfactory. The direction is clearly given ; and, considering the purpose for which it is given, it seems to us that it is not safe to infer, from the mere phrasing of it, that it was not intended to be mandatory. Of what avail is it for the magistrate to go with the wife apart from her husband to take her acknowledgment, if she does not know what she is acknowledging ? The first thing for him to do, therefore, is, to make sure that she understands her act ; for, until she understands it, she cannot truly say that it is her free and voluntary act ; and, in these days, she is quite as likely to need protection from her own ignorance, or from her blind trust in her husband, and sometimes from downright imposition, as from fear or coercion.

In Pennsylvania, under a statute which directed the magistrate to read the deed, or otherwise make its contents known, it was

decided that a certificate which did not show compliance with this direction was invalid. *Steele* v. *Thompson*, 14 Serg. & R. 84, 92 ; *Barnet* v. *Barnet*, 15 Serg. & R. 72. To the same effect see, also, *Pease* v. *Barbiers*, 10 Cal. 436 ; *Garrett et al.* v. *Moss et al.* 22 Ill. 363 ; *O'Ferrall* v. *Simplot*, 4 Greene, Iowa, 162 ; also 4 Iowa, 381. And, as to the strictness of the law, see *Lessee of Watson & Wife* v. *Bailey and others*, 1 Binn. 470 ; *Watson* v. *Mercer*, 6 Serg. & R. 49. In Missouri, a certificate which did not show that the wife had been made acquainted with the contents of the deed, as directed, was held to be insufficient. *Chauvin* v. *Wagner*, 18 Mo. 531 ; *Burnett* v. *McCluey*, 78 Mo. 676. In *Langton* v. *Marshall*, 59 Texas, 296, a certificate stating that the *feme* declared that she " fully understood the contents " of the deed was held to be an insufficient compliance with a statute requiring from the *feme* a declaration that " the said writing *to be shown and explained to her* " was her free act, and giving the form of a certificate in which compliance is stated in the words, " having the same fully explained to her." See, also, *Ruleman* v. *Pritchett*, 56 Texas, 482. In Virginia the statute required the magistrate to certify *in effect* that the wife, being " examined by me privily and apart from her husband, and *having said writing fully explained to her*," declared, etc. ; and, under this statute, it was held, in *Hairston* v. *Randolphs*, 12 Leigh, 445, that a certificate which did not show such explanation was invalid. And see *Bolling* v. *Teel*, 76 Va. 487. And in West Virginia, which has the same statute, it has been decided that a certificate which stated that the deed was " read " to the wife, instead of stating that it was " fully explained " to her, is insufficient. *Watson* v. *Michael*, 21 W. Va. 568.

These cases show the strictness of the law. It is true that some of them are cases under statutes which give a form of certificate ; but it is not the form of words, but the fact that explanation was given as directed, which the courts consider important. In *Hairston* v. *Randolphs*, the court, in giving its decision, uses the following significant and instructive language : " There is good reason for requiring a substantial compliance with all the requisitions of the statute. The Statute of Fines, 18 Ed. 1, provided that, ' if a woman *covert* be one of the parties, then she must be examined by four of said justices, and if she doth not assent there-

unto, the fine shall not be levied.' Coke, in his commentary on this statute, 2 Inst. 514, says: ' The examination must be solely and secretly, and the effect thereof is whether she be content of her own free will, without any menace or threat, to levy a fine of these parcels, and *name them unto her, everything distinctly contained in the writ, so as she perfectly understand what she doth.*' This statute had received, therefore, a construction in practice which required an explanation to the wife, and her knowledge of the nature of the act done." The significance of the practice under the ancient method of conveyance by fine is, that in the case of married women, our modern acknowledgment is a substitute for it, or a revival of its protective procedure in another form.

Our conclusion is that, under our statute, the direction to show and explain the deed is clearly given; that the direction, notwithstanding the oblique manner in which it is expressed, is mandatory, and consequently that it is as necessary for the certificate to show compliance with it as with any other direction or requirement of the statute.

This being so, the next question is, Does the bill make a case for relief for the complainants? We think it does very clearly; for it shows a case of fraudulent representation and fraudulent practice by the defendant to and upon the Jacoy heirs. The defendant maintains that the Jacoy heirs are necessary parties. We do not think so. We are by no means clear that the complainants could not, without joining the Jacoy heirs, have the defendant decreed to hold as trustee for them, even if the Jacoy heirs had not conveyed their interest to Caleb H. Paine; but, in view of that conveyance, we do not think there can be a doubt that the complainants are entitled to full relief without joinder with them. The case of *Whitney* v. *Roberts*, 22 Ill. 381, cited by complainants, is fully in point. In that case the court held that when a person by fraud and deception obtained a conveyance, the grantors may disregard it and convey to a third party, who may establish the fraud in equity, and have the same relief which the grantors, but for their conveyance, would have had.

*Demurrer overruled.*

*Miner & Roelker* and *Henry B. Whitman,* for complainants.
*James Tillinghast,* for respondent.