CHAUVIN *et al.*, Plaintiffs in Error, *vs.* WAGNER & DORSETT, Defendants in Error.

18 531
102 407
18 531
118 534

1. A certificate of a married woman's acknowledgment must substantially comply with the requirements of the statute. A defective certificate cannot be aided by a court of equity, nor by parol proof.

2. Under the act of 1825, a certificate of a married woman's acknowledgment of a conveyance of her own estate is not vitiated by the omission to state that the contents were *explained* to her, if it is stated that she was *acquainted* with the contents.

3. A majority of the court concur in the opinion that a certificate, which states that the wife "was examined whether she acknowledged that she executed the deed *and relinquished her dower*," and that "she acknowledged that she executed the deed *and relinquished her dower*," will pass her estate, being otherwise sufficient. Judge Ryland dissents.

4. Judge Gamble is of opinion that, under the act of 1825, the omission of the words "*and does not wish to retract*," in a certificate of a married woman's

Chauvin *v.* Wagner.

acknowledgment of a conveyance of her own estate, is fatal. Judge Scott dissents. Judge Ryland expresses no opinion.*

5. The covenant of seizin will not estop the heirs of the grantor from asserting a title not derived from him. They are merely liable in damages to the extent of the assets that have descended upon them.

6. The covenant for further assurance will not estop the heirs of the grantor from asserting a title not derived from him, unless assets have descended upon them, equal to the value of the property, *at the time they acquired the title* to it.

## *Error to St. Louis Court of Common Pleas.*

This was an action in the nature of ejectment, begun by the plaintiffs in error in 1850, to recover a lot of ground in the city of St. Louis. The cause was submitted below upon an agreed case. The titles of the respective parties are stated in the opinion of the court. The following facts, upon which stress was laid in argument, may be added : In the deed of F. D. Chauvin and wife to Desiré, the land conveyed is described as that conveyed to the wife by her brother-in-law, Leduc, in 1816. After the death of her husband in 1835, Mrs. Chauvin lived unmarried in St. Louis county, up to her death in 1849, and for five years next preceding her death, she resided in St. Louis city. After his purchase Desiré improved the land. There was a judgment for the defendants below, from which the plaintiffs appealed to this court. The cause was argued at the October term, 1852, by Mr. Haight and Mr. Lord for the

---

* A majority of the court concurred in reversing this judgment for different reasons. Judge Gamble was of opinion that the omission in the certificate of the words " and does not wish to retract" was fatal. Judge Ryland thought that the addition of the words, " and relinquished her dower," was fatal, but expressed no opinion on the other point. Judge Scott was for affirming the judgment. On a motion for a rehearing, it was urged, (assuming Judge Ryland to be of opinion that the omission of the words " and does not wish to retract," did not vitiate,) that, as two judges thought that neither of the objections to the certificate was valid, it was to be taken as the opinion of the court that the deed should be sustained, and so the judgment ought to be affirmed. But the court replied that, as a majority were of opinion that the plaintiffs were entitled to a reversal of the judgment, it mattered not what their reasons were.

plaintiffs in error, and by Mr. Field and Mr. Gantt for the defendants in error, and again at the March term, 1853, by Mr. Lord for the plaintiffs in error, and Mr. Geyer for the defendants in error. Briefs were filed by Messrs. Haight, Lord and Whittelsey for the plaintiffs in error, and Messrs. Spalding and Shepley, Field and Gantt, for the defendants in error.

Messrs. *Lord, Haight* and *Whittelsey*, for plaintiffs in error. The acknowledgment of the deed is defective, and insufficient to pass the wife's estate. 1. It is the acknowledgment of a relinquishment of dower, and not of a conveyance of her estate. Without the acknowledgment, the deed is void, (12 Pet. 375;) with it, it passes just what the wife assents to pass; and when she says she relinquished her dower, what right has any other person to say she intended to pass her estate? By the 11th section of the act of 1825, where the wife is conveying her dower, she must " acknowledge that she executed the deed *and relinquished her dower.*" By the 12th section, where she is conveying her own estate, she must " acknowledge that she executed the deed *and does not wish to retract.*" The acknowledgment in question is in the precise form of a relinquishment of dower. Looking to the certificate alone, no one can say she intended to convey more than a dower interest; and the certificate cannot be aided by any consideration outside of it. If this acknowledgment is good, the 12th section of the act is mere surplusage. *M·Daniel* v. *Priest*, 12 Mo. Rep. 544. Mills' Con. Rep. (S. C.) 240. Littell's Select Cases, 156. 2. It does not appear from the certificate that any proof was made to the court of the wife's identity. The clerk certifies that the proof was made to him, not to the court. 3. It does not appear that the contents of the deed were explained to her. It is stated that " she was made acquainted with the contents;" but something more was required; it was, that the contents should be *explained* to her, so that she could understand the legal effect of the deed. 4. The certificate does not show whether she was examined as to whether she wished to retract. The law was framed with a

jealous care of the rights of married women. It was not suffi-
cient that she executed the deed voluntarily. The execution
passed nothing; and it was intended that she should have an
opportunity to retract, up to the time of the acknowledgment,
which was the act that passed her estate.

The court is referred to the following decisions in the seve-
ral states of the Union, upon statutes enabling married women
to convey:

MASSACHUSETTS. *Lufkin* v. *Curtis*, 13 Mass. Rep. 223.
*Catlin* v. *Ware*, 9 Mass. Rep. 209. *Powell* v. *Monson*, 3
Mason, 347, 349. *Raymond* v. *Holden*, 2 Cushing, 264.
In Massachusetts, as well as in Maine, New Hampshire, Con-
necticut and California, the estate of the wife passes by her
merely joining with her husband in a deed. The decisions
show that, where less formality is required in the acknowledg-
ment of the deed, greater particularity is exacted in framing
the deed itself.

ILLINOIS. *Mariner* v. *Sanders*, 5 Gilman, 113.. *Mason*
v. *Block*, 12 Illinois, 273. The case of *Hughes* v. *Lane*, 11
Illinois, 123, is cited by the defendants in error, upon the
point that the addition of the words " and relinquished her
dower" does not vitiate the acknowledgment. But the judge
delivering the opinion expressly says that question does not
arise and is not decided.

MICHIGAN. *Sibley* v. *Johnson*, 1 Mich. Rep. 380.

RHODE ISLAND. 1 Mason's C. C. R. 67, 115. 1 Rhode
Island Rep. 209.

NEW YORK. *Jackson* v. *Stevens*, 16 J. R. 110, 114.
*Jackson* v. *Cairns*, 20 J. R. 301. 8 Cowen, 277. 10 J. R.
440. *Martin* v. *Dwelly*, 6 Wend. Rep. 9. *Gillet* v. *Stan-
ley*, 1 Hill, 121.

VIRGINIA. 1 Munf. 518, 523. *Hairston* v. *Randolph*, 12
Leigh, 445. 1 Call, 190. 5 Grattan, 414. 2 Randolph,
549. 4 Leigh, 224.

KENTUCKY. *Still* v. *Swan*, Littell's Select Cases, 156, (in
point.) *Tevis* v. *Richardson*, 7 Monroe, 654, (in point.)

*Barnett* v. *Shackelford*, 6 J. J. Marsh. 532. 3 Dana, 289, 291. 8 B. Monroe, 177, 217. 1 Peters, 346.

TENNESSEE. Meigs's Rep. 437. 1 Yerg. 413, 429. *Perry* v. *Calhoun*, 8 Humphreys, 551.

NORTH CAROLINA. 2 Dev. Rep. 306. 2 Hayw. Rep. 68. 2 Murph. Rep. 390. *Askew* v. *Daniel*, 5 Iredell's Eq. Rep. 321. *Jones* v. *Lewis*, 8 Iredell's Law Rep. 70. 1 Dev. & Batt. 582. 1 Dev. & Batt. Eq. Rep. 346. · 9 Iredell, 353. *Green* v. *Branton*, 1 Dev. Eq. Rep. 500.,

SOUTH CAROLINA. 1 Hill's (S. C.) Rep. 110. *Brown* v. *Spann*, Mills' Con. Rep. (2 vols. in one,) 240.

MARYLAND. 2 Harris & McH. 38. 3 ib. 430. 1 Harr. & J. 291, 293. 2 ib. 230. 1 ib. 751. 2 ib. 62. 1 Pet. 109.

PENNSYLVANIA. 3 Yeates' Rep. 471. 1 Binney, 470. *Kirk* v. *Dean*, 2 Binney, 341., 5 Binney, 296. 4 Serg. & R. 272. 5 S. & R. 289. 6 S. & R. 49. 6 S. & R. 143. 9 S. & R. 268. 10 S. & R. 445. 14 S. & R. 84. 15 S. & R. 72. 3 Wharton, 457. 4 Harris, 532.

OHIO. *Brown* v. *Farrar*, 3 Ohio Rep. 140. 6 Ohio, 353. 12 Ohio, 377. 13 Ohio, 116. 15 Ohio, 408. 16 Ohio, 599, 639. 17 Ohio, 105. These later decisions in Ohio are favorable to the defendants in error. They seem to be judicial attempts to do away with solemn legislative enactments.

The cases above cited fully establish the following propositions :

That statutes enabling married women to convey, being in derogation of the common law, are to be strictly pursued.

That the estate of the wife is not passed by the execution of the deed, but by its acknowledgment in the mode prescribed by law.

That parol evidence is never admitted, to aid a defective certificate, nor is any presumption indulged in to give validity to deeds of married women.

That if the certificate of acknowledgment is insufficient to pass the estate, then it is as though no acknowledgment had

ever been made, and no act of the wife can ratify what never had any existence. (See 1 Zabriskie (N. J.) Rep. at p. 541.)

That the certificate in this case does not show a compliance with the law of 1825, and does not bar the plaintiffs from recovering the land in question.

That the decision of this court, in *McDaniel* v. *Priest*, 12 Mo. Rep. 544, is sustained by a long series of adjudications.

But it is insisted that this is a case for equitable relief against the heirs of Chauvin, and that, under the new practice, this may be set up as a defence. To this it may be replied that a deed can only be made in the mode prescribed by statute. If there was no acknowledgment, there was no deed, and a court cannot make one. It is true that statutes to cure defects in acknowledgments have been sustained. But no state has yet passed any law that when a married woman relinquishes her dower, she shall be held to have conveyed a fee.

Again, it is said that the plaintiffs in error are estopped by the covenants contained in the deed from Chauvin and wife to Desiré. If this is so, it must be either by the covenant of seizin or the covenant for further assurance. They are not estopped by the covenant of seizin, because the uniform measure of damages for the breach of that covenant is the purchase money and interest. *Collier* v. *Gamble*, 10 Mo. Rep. 467. The liability of the plaintiffs under that covenant would merely be to refund the consideration money and interest, if assets to that extent descended to them from their father. Nor are they estopped by the covenant for further assurance. They claim as heirs of their mother, not of their father. There is no covenant binding on her or her heirs. The covenant of their father bound them to convey any title they might acquire from him, but not a title derived from any other source. If it appeared that the amount for which the plaintiffs are liable on their father's covenant was equal to the present value of the land, then it may be that, to avoid circuity of action, a rebutter would be allowed. In this case, the covenant for further assurance

Chauvin *v.* Wagner.

has never been broken. *Miller* v. *Parsons*, 9 Johns. Rep. 336. Bennett's Case, Cro. Eliz. 9. Hilliard's Abr. sec. 85, p. 381.

Mrs. Chauvin has done no acts since the death of her husband, which can amount to an estoppel *in pais.* 8 Wend. 482. 3 Hill, 221–2. 4 Barbour's Rep. 498. *Gibson* v. *Gibson*, 15 Mass. 106.

Messrs. *Spalding*, *Field* and *Gantt*, for defendants in error. I. The certificate of acknowledgment is sufficient to pass the estate of Mrs. Chauvin. This case is distinguishable from *M. Daniel* v. *Priest*, (12 Mo. Rep. 544,) in two particulars. 1. The deed of Chauvin and wife describes the land as that conveyed to the wife by her brother-in-law, Leduc, so that she, having been made acquainted with the contents of the deed, must have known that she was conveying land which belonged to her, and in which she could have no right of dower. 2. The second acknowledgment by Mrs. Chauvin before a court was obviously intended to supply the defect of the previous acknowledgment before a justice of the peace. It would have been useless to have gone before a court, if she had intended to convey a dower interest. The first acknowledgment would have been effectual. But the decision in the case of *McDaniel* v. *Priest* is not law. *Hughes* v. *Lane*, 11 Illinois Rep. 1 Strobhart, 571. 5 B. Monroe, 481. 15 Ohio, 423. 16 Ohio, 599, 639, 799. 1 Pet. C. C. R. 188. 5 Blackf. 481. 6 ib. 475. 3 McLean, 245. 3 Dana, 111.

The plaintiffs in error, in their statement of the New York decisions, have omitted the important case of *Jackson* v. *Gilchrist*, 15 J. R. 108. Of the North Carolina decisions, the case of *Etheridge* v. *Frisbee*, 9 Iredell, 312, is omitted. Of the Ohio cases, the strong case of *Newcomb* v. *Smith*, Wright's Rep. is not mentioned; nor is any mention made, among the Kentucky cases, of *Hughes* v. *McKinsey*, 5 Mon. *Nantz* v. *Bailey*, 3 Dana, and *Gregory* v. *Ford*, 5 B. Mon. —all of which are strong in favor of the defendants—the last particularly, decided as recently as 1845. An examination of

all the reported cases shows that courts have been disposed to up-hold certificates, although varying from the forms contemplated by the statutes, whenever the substantial ends of the law are answered. In many cases, it must be admitted, courts have departed from this rule, but they have generally been brought back to it by legislative enactment or the common sense of mankind. The cases in Pennsylvania, Kentucky and Ohio particularly illustrate this remark. It is remarkable that, among the reported cases, the dispute has always arisen upon some alleged *omission* in the certificate. The case of *Mc-Daniel* v. *Priest* stands alone in deciding that the certificate is bad for containing too much. II. The facts of this case justify the presumption of a delivery of the deed by Mrs. Chauvin, after she became discovert by the death of her husband. 1. She took possession of all the estate of her husband, including the price of the lot in question, and expended it in the support of herself and family. 2. She stood by and suffered the purchasers of the lot to expend large sums upon it in improvements, without interposing a claim. 3. She acquiesced in the possession of the lot by the purchasers for a period of fourteen years, during all of which time, she was discovert. Cowper, 201. Douglass, 53, note. *Evans* v. *Evans*, 3 Yeates, 507. 5 Mass. 454. Reeve's Dom. Rel. 184. 17 Pick. 255. 9 Barr, 299. 2 Paige, 199. 5 J. C. R. 184. 17 Pick. 255. III. The plaintiffs, who are the heirs of Francis D. Chauvin, are rebutted by the warranty of their ancestor. The modern covenants for title have superseded the old covenants of warranty. Platt on Cov. 304. But the right to rebut attaches to these modern covenants. 1 Summer's Rep. 235. To prevent circuity of action a covenant is permitted to be set up as a defence. 17 Mass. Rep. 623. 8 J. R. 186. 2 J. R. 186. Platt on Cov. 593. The words "grant, bargain and sell" imply a covenant of indefeasible seizin, of freedom from incumbrances, and for further assurance. It is admitted that these covenants would have barred F. D. Chauvin from setting up any title acquired by him, af-

ter his deed of 1829, and that his heirs might be barred from setting up the present title, if it was shown that their liability on their ancestor's covenant was equal to the present value of the land. If this argument is good, then the plaintiffs may be barred one month and not barred the next, according to the fluctuations in the price of real estate. Again, it is objected that F. D. Chauvin could not have been compelled specifically to perform his covenant for further assurance, and therefore his heirs, upon whom the covenant has descended, cannot be. It is true that, if the title had remained in Mr. Chauvin, and he had acquired no additional title after the date of his deed, a specific performance might have been impossible. But if he had afterwards by any means acquired the title of Mrs. Chauvin, he could have been made to convey it to his covenantee. And so, his heirs who are bound by the covenant, can be decreed to convey the title acquired from their mother, and which they are competent to convey. IV. This is a case for equitable relief against the heirs of Chauvin, and it can, under the new code of practice, be set up as a defence. 1 Story's Eq. §97, 136, 151, 166, 243. 2 Sugden on Powers, 103. 2 J. C. R. 537. 7 Gill & John. 191. In Ohio, Pennsylvania and New York, acts to cure defective acknowledgments have been held constitutional on the ground that the contract was valid in equity, and so no contract was made where none existed before. 16 Serg. & Raw. 35. 8 Peters, 88. 1 Watts, 330. 3 McLean, 230. 16 Ohio Rep. 599. 15 J. R. 109. V. The acts of the widow and her forbearance and acquiescence for so long a time, ought to be considered a ratification. Cowper, 201. 4 Dessaus. 465. 1 Bibb, 168. 4 Dana, 441. 6. Conn. Rep. 505. 8 Taunt. 35. 2 Kent's Com. 195, sec. 31. 5 Yerg. 41.

GAMBLE, Judge, delivered the opinion of the court.

The plaintiffs are the heirs of Emily Chauvin, wife of Francis D. Chauvin. They are the children of that marriage. The

property in controversy was conveyed to their mother in 1816, before her marriage. In 1829 a deed was made by Chauvin and his wife, conveying the property to one Desiré, under whom the defendants claim title. This deed was first acknowledged before a justice of the peace in St. Louis county by Chauvin and his wife, upon which the justice made a certificate of acknowledgment, such as he would have made upon a deed, in which the wife relinquished dower to lands in his county. Afterwards it was discovered that the deed had not been so acknowledged as to be effectual as a conveyance of a married woman's estate, and Mrs. Chauvin appeared before the Circuit Court of St. Charles county, to acknowledge the instrument in proper form. The certificate of acknowledgment endorsed on the deed by the clerk is in the following form :

" State of Missouri,     } *ss.*
" County of St. Charles,   }

" Be it remembered that, at a term of the Circuit Court for the county and state aforesaid, began and held at the courthouse in said county, on the fifth day of October, in the year of our Lord eighteen hundred and twenty-nine, before the judge thereof, in open court, personally appeared Emilie Chauvin, wife of Francis Devinz Chauvin, who was proved by Edward Bates and Wm. N. Fulkerson, examined before me, on oath, to be the person whose name is subscribed to the foregoing instrument of writing, as having executed the same, and acknowledged the same to be her act and deed, for the purposes therein mentioned. She, the said Emilie, being by the court first made acquainted with the contents thereof, and examined separate and apart from her husband, whether she executed the said deed, and relinquished her dower to the lands and tenements therein mentioned, voluntarily, freely and without compulsion or undue influence of her said husband, acknowledged and declared that she executed the said deed and relinquished her dower in the said lands and tenements therein mentioned, voluntarily, freely, and without compulsion or undue influence of her said husband.

"In testimony whereof, I, William Christy, jr., clerk of the Circuit Court, have hereunto caused the seal of said [L. S.] court to be affixed, at St. Charles, the 7th day of October, A. D. eighteen hundred and twenty-nine. ·

"W. CHRISTY, jr."

Desiré, the grantee in the deed, took possession of the property conveyed, immediately after the execution of the deed, and he and those claiming under him have ever since continued that possession. Chauvin, the husband, died in 1835, and his widow in 1849. The plaintiffs, as heirs of their father, received assets by descent equal to the value of the property at the time of its conveyance to Desiré. ·

The act regulating conveyances in the code of 1825, was the law in force at the time the deed from Chauvin and wife to Desiré was made, and its effect as a conveyance of the estate of the wife is to be determined by that act. The 12th section of the act is in these words : " Sec. 12. Be it further enacted, That when any husband and wife shall wish to dispose of or convey the real estate of the wife, it shall and may be lawful for the said husband and wife to execute any grant, bargain, sale, lease, release, feoffment, deed, conveyance, or assurance in the law whatsoever, for the conveying of such lands, tenements and hereditaments ; and if, after the executing thereof, such wife shall appear before some court of record in this state, to the judges of which, or either of them, she is known or proved by two witnesses to be the person who executes such deed or conveyance, such court or one of the judges thereof shall make her acquainted with and explain to her the contents of such deed or conveyance, and examine her separately and apart from her husband, whether she executed the same voluntarily, freely, and without compulsion or undue influence of her husband ; and if such woman shall, upon such examination, acknowledge such deed or conveyance to be her act and deed, that she executed the same voluntarily, freely, and without compulsion or undue influence of her husband, and does not wish to retract, the court shall cause their clerk to make a certificate, endorsed

35—VOL. XVIII.

or annexed to such deed, stating that such woman was person-
ally known to the judges, or one of them, or proved by two wit-
nesses (naming them) to be the person who subscribed such
deed or conveyance, and setting forth that the contents were
made known and explained to her, and the examination and
acknowledgment aforesaid, and such deed (being acknowledged
or proved according to law as to the husband) shall be as effec-
tual in law as if executed by such woman while sole and un-
married : Provided, that no covenant or warranty, contained
in any such deed or conveyance, shall, in any manner, bind
or affect such married woman, or her heirs, further than to con-
vey from her and her heirs effectually her right and interest
expressed to be granted or conveyed in such deed or convey-
ance ; nor shall any thing therein contained be construed to
authorize any husband and wife to convey any real estate
granted to the wife and her heirs during coverture."

It will be seen that this section requires that, after the execu-
tion of the conveyance, the wife shall appear before a court
of record, and that the court " shall make her acquainted with
and explain to her the contents of the deed or conveyance,"
and " examine her separately and apart from her husband,
whether she executed the same voluntarily, freely, and without
compulsion or undue influence of her husband." This much of
the section prescribes the duty of the court, and then it pro-
ceeds to declare " that if such woman shall, upon such exam-
ination, acknowledge the deed or conveyance to be her act and
deed ; that she executed the same voluntarily, freely and with-
out compulsion or undue influence of her husband, and does not
wish to retract, the court shall cause the clerk to endorse a cer-
tificate on the deed." The certificate is required to contain the
evidence of the following facts : 1st, the identity of the per-
son acknowledging the deed as the grantor ; 2d, that the con-
tents were made known and explained to her ; 3d, that she was
examined, as required ; 4th, that she acknowledged the con-
veyance in the manner prescribed. The objection is taken to
the certificate in the present case, that it does not show that

Mrs. Chauvin was identified by evidence given *to the court.* It is objected as to the explanation of the contents of the deed, "that the certificate only states that she was made acquainted with the contents of the deed," whereas, the act requires in addition, that the court should "*explain* the contents of the deed." It is objected to the statement of the privy examination that the whole effect of it is changed from that required by law, by the use of the words "and relinquished her dower to the lands and tenements therein mentioned." She was examined "whether she executed the said deed *and relinquished her dower* to the lands and tenements therein mentioned voluntarily," &c. It is objected to the acknowledgment, as stated in the certificate, that she "acknowledged and declared that she executed the said deed, and *relinquished her dower in the said lands,*" &c., and that the addition of the words in relation to the relinquishment of dower, gives a totally different character to the acknowledgment from that required by the statute.

1. The property in controversy was acquired by Mrs. Chauvin before her marriage, and she was married after the introduction of the common law. Under that system, she could make no deed, which would be effectual to pass the title to her property, after her marriage. In June, 1821, the assembly passed an act with this preamble : "Whereas, doubts exist whether, by any laws in force in this state, a husband and wife are authorized to make conveyances of real estate belonging to the wife, therefore, be it enacted," &c. The act provides for a privy examination and acknowledgment, to be certified under the seal of the court and endorsed on the deed. That act continued in force until the revision in 1825, when the act was passed which has before been quoted. It is not doubted that these are to be regarded as enabling statutes, and that they furnish the only law which, after their passage, was to be pursued in conveying the title of a married woman by deed. That they are to be pursued substantially, in order to the conveyance of the title of the *feme covert,* is the undoubted result of the au-

thorities. That a substantial compliance with the law is sufficient for that purpose, is admitted in all the numerous authorities referred to. In the language used in *Gill* v. *Fauntleroy's heirs*, 8 B. Monroe, 178, "it is indispensable that the certificate of the clerk or examining officer should state the material facts, either in express terms or in language from which they may be implied." The certificate of acknowledgment cannot be helped by proving that the facts were different, as they actually occurred, from the statement of them in the certificate. *Barnett* v. *Shackleford*, 6 J. J. Marsh. 532. *Blackburn* v. *Pennington*, 8 B. Monroe, 220. *Elliott* v. *Piersol*, 1 Peters' Rep. 338. *Watson* v. *Baily*, 1 Binney, 479. *Jourdan* v. *Jourdan*, 9 Serg. & Raw. 274. To these cases might be added a multitude of others, from different states of the Union. If the acknowledgment is substantially defective, the title to the property does not pass, and the deed cannot be made effectual by the aid of a court of chancery. *Green* v. *Branton*, 1 Dev. Eq. Rep. 500. *Flanagan* v. *Young*, 2 Har. & McH. 38. *Butler* v. *Buckingham*, 5 Day's Rep. 504. *Barnett* v. *Shackelford, ubi sup*. *Martin* v. *Dwelly*, 6 Wend. 9.

2. These positions being assumed, the certificate of acknowledgment in the present case will be examined. The certificate says that Mrs. Chauvin was "made acquainted with the contents of the deed." "Acquainted" means "familiarly known." The act says that the certificate shall set forth that the contents were "made known and *explained* to her." The duty enjoined upon the officer is, to see that the woman understands the nature and effect of the instrument she has executed. It would clearly be superfluous for the court to attempt an explanation of the contents of a deed, if the woman should so state her own understanding of its effect as to show that she already understood it perfectly, and the certificate would be false, if it said that the contents of the deed were made known and explained to her, when the court took the acknowledgment upon ascertaining that she already knew and under-

stood the contents. *McIntyre* v. *Ward*, 5 Binn. Rep. 301. *Talbot* v. *Simpson*, Pet. C. C. R. 190. Suppose a certificate should state that the woman appeared before the court and presented the deed for acknowledgment, stating that it was a deed for her own property, conveying it to the grantee for a consideration, which she named, (and which was the consideration in the deed,) and that the grantee was to receive the absolute estate in fee simple, and that she described the property just as it was described in the deed. If her statement, thus made to the court, corresponded with the language and legal effect of the deed, it is not doubted that she had already such acquaintance with the contents of the instrument, as would dispense with any attempt on the part of the court to explain the contents to her. The design of the law would be accomplished, although the officer imparted no information to her. It would be a question of casuistry, whether the officer could certify that he made her acquainted with the contents of the deed, or explained the contents to her, when she knew them perfectly before she came before him. The courts and officers entrusted with this duty must be supposed to understand the object of the statute in requiring them to see that the woman knows the effect of her act, and the certificate is only required to show that the duty enjoined upon the officer has been performed.

In some cases, as where the instrument is in a language with which the woman is not acquainted, it will be necessary to explain the meaning of the words employed in the instrument. In some cases, where there are complicated limitations, there may be a necessity for an explanation of the effect of such parts of the instrument. In such cases, the officer or court would explain the instrument, and the law requires the explanation to be made, unless the woman had the requisite knowledge without the explanation. The certificate in the present case states, that the woman was made acquainted with the contents of the deed, and this may be regarded as a statement that she understood the nature and effect of the instrument. There are many cases in different courts, in which such strict-

ness is required as would render this acknowledgment inef-
fectual, because the fact is not stated that the contents of the
deed were explained to Mrs. Chauvin ; but we are not dispo-
sed to require any such literal compliance with the statute. It
is said in the certificate, that the contents were "familiarly
known to her," because that is the meaning of the words that
she was made "acquainted with the contents," and we will in-
tend that there was a case before the court taking the acknow-
ledgment, which did not require any explanation to be made to
the woman. This question was made and disregarded in *Mc-
Daniel* v. *Priest*, 12 Mo. Rep. 545.

3. The next question is, whether the certificate is invalid,
because it states that the examination of the wife was "whether
she executed the deed and *relinquished her dower* voluntari-
ly," &c., and because it states that the acknowledgment she
made upon that examination was, "that she executed the said
deed and *relinquished her dower* voluntarily," &c. The ex-
amination embraced the question, whether she executed the deed
voluntarily, and the acknowledgment of the wife was, that she
did execute it voluntarily ; but, in addition, she was examined to
the point, whether she relinquished her dower, and she acknow-
ledged that she did relinquish her dower. It will be seen by
referring to *McDaniel* v. *Priest*, 12 Mo. Rep. 545, that the
precise point here made was considered and decided, and we are
now asked to review that decision. It was admitted in that case
that the words in the certificate relating to the relinquishment
of dower were superfluous, and if they were stricken out, the
certificate would be in exact conformity to the act. It was said
that, if those words had no tendency either to limit or extend or
control in any manner the language immediately preceding them,
there would be no objection to regarding them as mere sur-
plusage. But it was said to be "obvious that the additional
clause might well be construed as a limitation upon the effect
of the preceding acts, and that the wife had, in executing the
deed, merely relinquished her dower, and had not parted with
her inheritance."

The act requires the court to examine the woman " whether she executed the deed voluntarily ;" but it does not attempt to to prescribe the questions to be asked, or in any manner direct the course of examination, or the form in which the examination shall be certified. The court is not confined to asking her whether she executed the deed voluntarily, but may and ought to ask all questions which may be proper in the given case, to ascertain whether she is acting freely. If she does not appear to be acting freely, the court should not proceed to take the acknowledgment. If she is acting freely, the whole examination is not to be stated in the certificate, but the fact that she was examined as to her freedom of action in executing the instrument is to be certified. The certificate in this case states that she was so examined upon the question, whether her execution of the deed was voluntary, and that she was further examined as to whether she relinquished her dower in the land freely and voluntarily. Now it is observable that this examination succeeds the fact that the woman is made acquainted with the contents of the deed. She is understood to be of sufficient intelligence to comprehend the effect of the instrument in conveying her land, when the court has made her acquainted with and explained its contents. If she does understand its effect in conveying the title, and it appears on examination apart from her husband that she has executed it freely, then she must regard any examination about releasing her dower as superfluous nonsense, or she must consider such examination about relinquishing dower as one of the ceremonies of the law, perfectly incomprehensible in its application to a deed that conveys her entire estate. The only effect of the examination about the relinquishment of dower, when stated in a certificate such as this, is to cast a doubt upon the question, whether the court had not misconceived the nature of the instrument and its operation upon the title to the land, and that therefore, in explaining the contents to the woman, a wrong impression of its effect had been conveyed to her mind. But if we have the idea clearly in our minds, that the court and the woman both understood

the effect of the instrument in conveying her title, then the examination about dower, if it ever was made, was merely superfluous and does not vitiate.

The same remarks apply to the further statement in the certificate, that she acknowledged and declared that she executed the deed *and relinquished her dower freely*, &c. These words, in the statement of the examination and acknowledgment, upon the supposition that the duty of the court, in making her acquainted with and explaining the contents of the deed to her, had been performed, are entirely without meaning, and could not possibly have misled her.

4. The next objection made to the certificate is, that Mrs. Chauvin did not acknowledge that " she did not wish to retract." If the statute requires that to be a part of the acknowledgment, the certificate in the present case is entirely silent about the fact. The acknowledgment is to be made after the examination, and the examination, as required, evidently does not embrace the then state of the woman's wishes in relation to the deed. She is to be examined as to whether the deed had been executed by her voluntarily, not whether she wished it to be in force as a conveyance. Still, if the acknowledgment, which she is to make, is to include her present wishes in relation to the deed, it must so appear. The Supreme Court of Illinois, in *Hughes* v. *Lane*, 11 Ill. Rep. 132, held, under an act precisely like ours, that the fact, that the woman did not wish to retract, was not one about which she was to make an acknowledgment, but the words were inserted in the statute with the design of allowing a married woman to recall the consent to the conveyance which she had freely given. It must be admitted that this reading of the statute, while it may support titles, strains the language of the act very greatly. The whole section is but a single sentence. It opens by allowing husband and wife to convey the real estate of the wife, by any conveyance known to the law, and then prescribes the course to be pursued to make the instrument effectual. It requires that after the execution of the deed, she shall appear before a court, and

be made acquainted with the contents of the instrument, and shall be examined apart from her husband as to whether she executed the instrument voluntarily; then comes a statement of what she is to acknowledge: " if such woman shall acknowledge such conveyance to be her act and deed, *that she* executed the same voluntarily, &c., and without compulsion, &c., and does not wish to retract," the court shall cause the clerk to endorse a certificate, &c. The court of Illinois considers the last words " and does not wish to retract" should be read as if the words " if she" were inserted before the word " does," so that the clause would read " and *if she* does not wish to retract, the court shall cause the clerk to endorse a certificate." The most natural reading of the whole clause relating to the acknowledgment, requires that the words " that she," which were previously used in respect to the acknowledgment, should be repeated before the word " does," in this clause, relating to retracting, so that it will read " and that she does not wish to retract," and thus be a part of the acknowledgment made by the woman. This reading of the clause relating to the acknowledgment was that understood at the time the code of 1825 was published, and was used in the form of acknowledgment of the conveyance of a married woman's property, published in the appendix to that code, under the direction of the act which provided for printing the code. R. L. 1825, 830. Regarding this as the meaning of the act, it was necessary that it should appear, not only that the woman had originally executed the conveyance with entire freedom, but that, at the time of acknowledgment, she continued in the same mind, and was still willing that the instrument should have effect. Inasmuch then as the certificate does not, in any manner, refer to Mrs. Chauvin's willingness, at the time of the acknowledgment, to give effect to the deed, it is defective, and cannot be helped by any inference to be drawn from the fact that she appeared before the court without her husband, or that she had previously made an acknowledgment before a justice of the peace, or that this second acknowledgment was after a considerable interval.

An argument has been used against the validity of an acknowledgment, which contains a relinquishment of dower when the conveyance is of the land of the wife, which deserves notice, and which ought to have been noticed when speaking of that objection to the present acknowledgment. It has been said that, to allow a certificate to be valid, which states that the woman " was examined whether she relinquished her dower," and that she acknowledged that " she relinquished her dower," when the conveyance is of her own estate, is to make the acknowledgment required in the case where dower only is relinquished under the 11th section of the act, sufficient for both classes of cases, and in effect repeals the 12th section, so far as it prescribes the form of acknowledgment. But it is to be observed, that the deeds which convey the husband's land (which are more than ninety-nine in a hundred of all conveyances made) may be acknowledged, not only before courts of record, but before judges, clerks and justices of the peace, so that the form for the relinquishment of dower is given for the use of those officers, when the very appearance of the parties before them is sufficient indication that the woman is only to relinquish dower, and when they have no authority to take any other form of acknowledgment. The more solemn acknowledgment made before a court of record, was required to be made when the woman conveyed her own land, and her presence in court was, in general, a sufficient indication that such was the nature of the instrument to be acknowledged. Although the courts have power to take acknowledgments where the husband's land is conveyed, and the wife only relinquishes dower, yet, in point of fact, such power is scarcely ever exercised, because the judge or the clerk can take and certify such acknowledgment with as great effect as the court. It will be seen that the examination and acknowledgment which are to be made when the husband's land is conveyed, are directed to two points, first, whether the woman executed the deed (in the past tense) freely, &c., and, second, whether she *relinquishes her dower* (in the present tense) freely. The second part of

Chauvin *v.* Wagner.

the examination and acknowledgment is to have the evidence of the *present* willingness of the wife to the consummation of the conveyance, and has the same office with the clause of the acknowledgment when her own land is conveyed " that she does not wish to retract." The directions given in the act, for the purpose of ascertaining a wife's present wishes, are to guide the different officers in ascertaining such wishes, in relation to the deeds which they have authority to certify. To the justices, clerks and judges, who can take acknowledgments of conveyances for the husband's land, the statute says : ask her whether she " *relinquishes her dower* :" to the courts which alone can take the acknowledgment of a deed for the wife's land, it says : ask her whether she " wishes to retract. " As the certificate is prepared after the examination and acknowledgment have been made, it will speak generally in the past tense ; " she relinquished her dower ;" " she did not wish to retract ;" but in the communication between the officer and the wife, the law contemplates the present as the tense used : " she relinquishes;" " she does not wish to. retract." To use the question about the relinquishment of dower, where the wife is conveying her own land, and is made to understand the nature of the conveyance, will not vitiate the acknowledgment, if, with such knowledge of the contents of the deed, she declares that she does not wish to retract.

5. Regarding the conveyance by Chauvin and his wife as ineffectual to convey Mrs. Chauvin's estate, it is necessary to consider whether any covenants in the deed or any acts of Mrs. Chauvin, in her life-time, will bar the present plaintiffs, who claim as her heirs. There are no covenants but those contained in the words " grant, bargain and sell," which, by the statute, contain covenants " that the grantor was, at the date of the conveyance, seized of an indefeasible estate in fee simple in the premises conveyed ; that the same was then free from incumbrances done or suffered " from the grantor, his heirs and assigns, and all claiming under him ; and also for further assurance thereof, to be made by the bargainor, his heirs and as-

signs." R. C. 1825, p. 217. In *Collier* v. *Gamble*, 10 Mo. Rep. 467, it was held that the only one of these covenants which runs with the land, is that for further assurance. It is the only one which imposes an obligation in relation to any thing in the future. The others are broken as soon as made, if, in the one case, there is not an indefeasible seizin, or in the other, there is an incumbrance. A right of action exists in either case upon the appropriate covenant, on the execution of the deed, but the damages to be recovered may be enhanced by subsequent events. A recovery of the land by title paramount is not the breach of the covenant, but evidence of the extent to which the grantee is damnified by the breach, which existed as soon as the covenant was made. *Mosely and wife* v. *Hunter*, 15 Mo. Rep. 328. The liability on the covenants, arising as soon as the covenants were made, would bind the heirs of the grantor having assets by descent, in just the same manner that they would have been bound by a bond for the payment of money, in which he bound his heirs. The covenants are not connected with, nor do they run with the land. These covenants do not operate as the ancient common law warranty to transmit a subsequently acquired title to the covenantee, nor do they operate as a rebutter against the grantor in respect to their obligation as covenants. In some cases, recitals and admissions contained in deeds are held to estop the grantor and those claiming under him from asserting a title to the land conveyed, when such assertion of title would be contrary to the recital or admission made in the deed. *Goodlette* v. *Baily*, Cowper, 597. *Carver* v. *Astor*, 4 Peters, 86. *Kinsman* v. *Loomis*, 11 Ohio Rep. 478. *Root* v. *Crock*, 7 Barr, 380. *Stow* v. *Wise*, 7 Conn. Rep. 214. The principle in these and similar cases, would warrant the decision that the covenants contained in the words " grant, bargain and sell," and which are to be regarded as if written out in the deed, should, as an assertion of present seizin in the grantor, estop him and those claiming under him, from asserting a title which would involve a denial of seizin at the time of making

the conveyance. This principle has been applied to all persons claiming under the grantor who made the recital or admission, either as heirs, or purchasers from him. But in the present case, the principle is of no avail to the defendants, because the plaintiffs do not claim as heirs, or in any other manner, under their father, Francis D. Chauvin.

6. If the plaintiffs are not estopped by the covenants of seizin or against incumbrances, are they affected by the covenant for further assurance? This covenant runs with the land. If Francis D. Chauvin, the ancestor, had acquired a further or better title to the premises after his conveyance, he would have been compelled specifically to execute the covenant by conveying such title. 2 Sug. Ven. 541. 2 Ch. Cases, 212. *Smith* v. *Baker*, 1 Young & Collier's Ch. Rep. 223. If he had acquired a title subsequent to his conveyance, and such title had descended to his heirs, they would have been compelled to execute the covenant. The present plaintiffs have never acquired any title to the property from their father. In respect to it, there is no privity between them and their father. It was acquired fourteen years after his death. They are responsible as his heirs, upon his covenants as far as they have assets by descent from him. And if in the present case it were shown that the assets by descent were equal to the value of the property, when they acquired the title, their obligation then as his heirs, in respect to the assets descended, might have been held complete to make the assurance. The duty to make an assurance could not devolve on them while the title was in their mother. The covenant provided by the statute, if written in the deed in the form expressed in the act, would simply contain a stipulation "for further assurance thereof to be made by the bargainor, his heirs and assigns." The heirs of the grantor, as such, are bound to make assurance, but certainly not until there is something to be done by which the grantee's title can be secured. But nothing could be done by them until the title came to them by descent from their mother, and they could not be held to convey it then, unless they had assets of equal value

from their father. No such fact has been shown in the case. If the plaintiffs are to be held bound to make assurance because of equal assets descended from the father, it must be shown by the defendants.

Again, it is said that Mrs. Chauvin, having lived in the county of St. Louis for fourteen years after the death of her husband, and for much of that time in the city, where she could have seen those holding the lot under the deed she had executed, erecting improvements and expending their money thereon without disputing their possession or making known her claim, should be held to have ratified her former deed. It may be sufficient to answer, that the deed in the present case is not considered merely voidable, as is the deed of an infant, but entirely inoperative to convey her title to the land. If the deed was void, so that the estate of the wife did not pass, there could be no ratification by which the estate would pass, short of a re-execution of the instrument. She might do acts and make representations by which others, relying on her acts and representations, would be misled to their prejudice, and under such circumstances, she might be estopped from setting up the title that was really in her; but this is entirely a distinct question from that of the ratification of a deed. The authorities cited, which relate to the ratification of deeds by infants, are not considered applicable to the present case.

Whether, from the facts admitted by the parties, a re-delivery of the deed would be found by a jury, is not within our province to say; but certainly it is neither found by the court nor agreed by the parties, and it is not a presumption of law from the circumstances detailed in the agreed case. It has also been insisted that the conduct of Mrs. Chauvin in relation to the property after she became sole, was such as to estop her and her heirs from claiming it. Yet the agreed case states no act of hers that shows that she ever knew the condition of property, or the acts of the occupants in using and improving it. It is not believed that the mere want of action or claim on her part can have the effect of an estoppel, or be a defence, short

of the time in which the statute of limitations would bar her action.

I have thus, as briefly as possible, considered the questions in the case, and the conclusion at which I have arrived is one unfavorable to the title of the defendants, as presented on the record. It is a conclusion attained by yielding to what I regard as the demands of strict law, against my sense of the justice of the case. But the court has no power to dispense with any requirements which the law, makes. The very able and elaborate arguments and briefs of counsel would have rendered it comparatively easy to present the views of the different courts of the Union on most of the questions involved in the case, and their publication will render the future investigation of those questions easy to those who are to come after us.

Judge Ryland concurs in reversing the judgment, but does not concur in the views here expressed in relation to the case of *McDaniel* v. *Priest.* He adheres to that decision.

The judgment is reversed and the cause remanded.

Scott, Judge, dissenting. By the common law, a married woman could not, by any act *in pais,* even with the concurrence of her husband, convey away her lands. Statutes have been enacted, which enable her to convey away her lands and her right to dower, by the observance of certain forms. When the forms have been departed from in making the conveyance, the argument against its validity was, that as the statute is in derogation of the common law, it must be strictly complied with, otherwise the deed of a married woman cannot be valid. This argument, wherever modes of conveying the wife's land similar to our own prevail, has been made and has been resisted. All the courts have abandoned the common law rule, so far as this subject is concerned, that statutes made in derogation of the common law must be strictly pursued. In the determination of questions under these statutes, some courts have been liberal in their departure from the rule, others not so much so. The object of the law is, to obtain the free and unconstrained

consent of the wife to the deed alienating her rights. If this
is don', the law is satisfied—its purpose is accomplished. In
construi^g statutes of this kind, the courts must and do have a
regard to the circumstances and condition of the country in
which they are placed. They look to the officers entrusted with
the execution of the laws; they see them entrusted to men
honest, but altogether unskilful in the drafting of forms. They
may do what is required in a way substantially correct, and
yet when compelled to certify in writing the manner in which
they have carried it into execution, they will make a failure.
It is a task beyond their power from the want of skill. The
exigencies of men frequently require the execution of instru-
ments, under circumstances that professional men cannot be
consulted. They are not at hand, and the occasion will not admit
of delay. We must be aware, that there are men who can do a
thing correctly, and yet they will fail to show it, when they
attempt to certify the manner of doing it in writing, from their
want of skill in such matters. In many portions of our state,
men skilled in the forms of the law cannot be found who will
undertake the execution of the laws, and yet the convenience of
the people requires that officers should be appointed; under
such circumstances, it would be hard in courts to exact a rigo-
rous compliance with forms. Such a course would disturb a
great many titles, and that, too, in cases where no wrong had
been done, and where there had been an entire acquiescence in
the acts, conscious of their propriety, until the information of
the technicality is found out by some prowling assignee, or some
child who would make the mother who bore him sin in her
grave. As all courts have departed from the strict rule, and
as they have been more or less liberal in their departure, ac-
cording to circumstances, none can take a survey of the condi-
tion of this state, in relation to this matter, without being im-
pressed with the conviction, that justice and true policy both
demand an enlarged and liberal construction of the certificates
to the deeds of married women, especially as courts lend a wil-
ling ear to all complaints of obtaining conveyances from mar-

ried women by undue means, and as it does not appear that the law on this subject has been wrested to undue or improper purposes, as in none of the cases coming up is there any pretence of any unfair means being used to obtain their consent to the conveyances to which they have become parties.