Nall, &c., v. Miller.

CASE 78—PETITION EQUITY—APRIL 12.

# Nall, &c., v. Miller.

### APPEAL FROM MARION CIRCUIT COURT.

1. EQUITY WILL NOT IMPLY A PROMISE BY THE WIFE TO PAY THE HUSBAND FOR IMPROVEMENTS OR REPAIRS ON HER LAND, while used and enjoyed by him in virtue of his marital rights, nor even for money advanced to remove an incumbrance from it. And the wife's land should never be subjected to satisfy the husband's demand for services rendered or money advanced on account of it, though such claim be founded upon an express agreement with her, if either he has received rents and profits of equal value, or she has left at her death sufficient personal estate to pay it.

2. A VERBAL AGREEMENT BETWEEN HUSBAND AND WIFE, whereby the husband was to retain possession and use of the wife's farm for his life after her death, in consideration of repairs and improvements made thereon during their coverture, is not enforceable, because it is within the statute of frauds, and also because it was without consideration, as the husband was not entitled to charge for improvements and repairs on the farm, the use and enjoyment of it being full compensation.

W. J. LISLE FOR APPELLANTS.

1. J. M. Miller, by his marriage with Eliza J. Ray, took a freehold interest in her lands, both by common and statute law. Whether that freehold would continue to him longer than her life depended, of course, upon the birth of a child. (Schouler on Domestic Relations, p. 142; Gen. Stats., p. 721.)

2. The husband had the right to manage and control the wife's farm affairs and was entitled to all the profits he could make, rent free. Marriage in Kentucky is something more than a mere statutory union. (Maguire v. Maguire, 7 Dana, 184.)

   The fact that Mrs. Miller had been declared a *feme sole* did not lessen her husband's rights and obligations. The *feme sole* law should be strictly construed. (Bidwell v. Robinson, 79 Ky., 29.)

3. The profits received by the husband from the wife's lands and the personalty received by him from her estate abundantly paid him for all improvements he put on the land.

   A husband can not be paid for his work and labor unless the rents and profits of her lands were so increased by his labor and means as to exceed the necessities and comforts of the family. (Franklin *ex parte*, 79 Ky., 499; Wahl v. Murphy, 10 Ky. Law Rep., 388; Robinson v.

Huffman, 15 B. M., 82; M. E. Church v. Jaques, 1 Johns. Ch., 459; Schouler on Dom. Rel., 165.)

4. The court properly rejected the husband's claim for money used in discharging a lien on the wife's land, as this discharge was for his own benefit; and moreover because she left ample personal estate to reimburse the husband for the outlay. (King's Heirs v. Morris, 2 B. M., 100.)

5. A life tenant can not lay out moneys in improving the estate and charge it to the inheritance. (Caldwell v. Brown, 2 Hare, 144; 4 Kent's Comm., sec. 55, p. 84.)

6. The court properly rejected the claim for a life estate because the parties being husband and wife could not contract, and such a contract as is endeavored to be set up in this case is clearly within the statute of frauds.

**LAFE S. PENCE on same side.**

1. A husband can not charge for improvements made on the wife's land. (Robinson v. Huffman and wife, 15 B. M., 65; Sparks' Adm'r v. Ball, &c., 13 Ky. Law Rep., 64; Webster v. Hildreth and wife, 78 Am. Dec., 632; Burleigh v. Coffin, 53 Am. Dec., 236; Lewis v. Johns, 85 Am. Dec., 49.)

2. The husband can not charge the wife with a sum paid by him to equalize the partition of land in which she had an interest. (Snell v. Morris, 2 B. M., 100.; Spree v. Hight, 39 Am. Dec., 587; Warren v. Brown, 57 Am. Dec., 191.)

3. It was error to make the sum paid by the husband on the wife's turnpike subscription a lien on the land.

**SAMUEL AVRITT for appellee.**

1. The contract relied on by appellee should be enforced. Contracts between husband and wife when fair and reasonable are upheld in equity. (Latimer, &c., v. Glenn, 2 Bush, 542; Campbell, &c., v. Galbraith, 12 Bush, 462; Finlayson v. Finlayson, 17 Oregon, 347; s. c., 11 Am. St. Rep., 836; Hendricks v. Isaacs, 15 Am. St. Rep., 525; s. c., 117 N. Y., 411; Haussman v. Burnham, 59 Conn., 117; s. c., 21 Am. St. Rep., 75.)

2. Creditors of the husband may reach improvements put upon the wife's land by the husband. (Heck v. Fisher, &c., 78 Ky., 643.) And there can be no reason why the claim of the husband for remuneration for such improvements is not equally as strong as that of his creditors.

3. There is no reason why the rule applied to joint tenants in Alexander v. Ellison, 79 Ky., should not with equal fitness hold good between husband and wife.

4. Appellee should have been allowed a lien for the sum paid by him to equalize his wife and her sister in the division of the land. (Thorpe v. Thorpe's Adm'r, 3 Met., 372.)

5. The statute inhibiting resulting trusts in cases where the consideration is paid by one party and the conveyance taken to another does not prevent the party paying the money from recovering back the money paid, which is also regarded as a lien on the land. (Martin v. Martin, 5 Bush, 56.)

6. The turnpike subscription resulted in great benefit to the land, and no improvement did more to enhance its value. Therefore, appellee was properly allowed a lien on the land for the amount paid on that account.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

July, 1864, J. M. Miller, having two children, under age, married Eliza J. Ray, who had none. And soon after he removed to her farm of one hundred and fifty acres, former homestead of her father, where they continued to reside until she died, in 1890, there being no issue of their marriage.

The controversy in this case is between him and her heirs at law about certain demands he makes against her estate, and an alleged contract with her he seeks to have enforced.

The account filed by him, running from 1865 to 1885, is for improvements and repairs on the farm; $800 paid by him, in 1865, to her sister in order to equalize division of land left by their father; $500 paid on her subscription of stock for a turnpike road, and $70, price of an acre of land purchased for and conveyed to her, the whole amounting to about $2,500. Purport of the alleged contract, being verbal, is an agreement by her for him to retain possession and use of the farm for his life after her death, in consideration of repairs and improvements done thereon by him during their coverture.

The lower court adjudged him "entitled to $900 on account of betterments of the farm, viz.: $500 for turnpike stock, $50 for cistern, and $350 for repairment of

land outside the homestead," already set apart to him, and that the farm be sold to pay that sum. From that judgment the heirs at law have appealed, and he prays a cross-appeal.

It does not appear Eliza J. Miller ever agreed to pay or charge her land with payment for improvements or repairs put upon it, or for any money paid or services rendered by her husband. Indeed, such agreement is inconsistent with her alleged contract, according to which he was to have a life estate after her death, in consideration of the same improvements and repairs. There being then no agreement on her part to pay him for such services or advances of money, the law will not imply any. Nor do we see upon what principle of equity the judgment therefor was rendered and the farm left by her subjected to satisfy it. Equity will, under particular circumstances, give effect to a contract between husband and wife, even at his suit, if fair, just, and founded upon a valuable consideration; but will not imply a promise by her to pay him for improvements or repairs on her land while possessed, used and enjoyed in virtue of his marital rights, nor even for money advanced by him to remove an incumbrance from it. On the contrary, a presumption arises in all such cases, the consideration and motive of the husband was that he would be reimbursed by use and enjoyment of the land. (King's Heirs v. Morris and Snell, 2 B. M., 99.) And in our opinion the wife's land should never be subject to satisfy the husband's demand for services rendered or money advanced on account of it, though such claim be founded upon an express agreement with her, and however meritorious, if either he has received rents and profits of equal value

or she has left at her death sufficient personal estate to
pay it.

In the case just cited there was, as here, a contest
between the heirs at law of a married woman and her
husband as to his right to be reimbursed out of land of
which she died owner, the sum she was required under
the will of her father to pay in order to get possession,
and which he paid for her.   There the court said: "If the
$1,600 be regarded as a personal debt of the wife *dum
sola*, remaining unpaid until her death, her choses in action,
uncollected at her death, would of course be liable for its
payment.   And if the husband could be regarded as
becoming a creditor by paying the debt during the cover-
ture, there would be no propriety in allowing him to
charge the real estate in the hands of the heirs with the
entire amount, so long as he had any assets in his own
hands as administrator.   Nor would there be justice in
allowing this, although the debt be secured by lien on the
real estate of the wife.   And if the land were placed
under lien for payment of this debt, before or during
the marriage, and the husband, by paying the debt dur-
ing coverture, acquired the benefit of the lien to any
extent, we do not perceive on what principle he could
claim to stand on a better footing than an ordinary ten-
ant for life who, in discharging an incumbrance on the
estate, is considered as discharging in part a burthen upon
his own interest, and as having to that extent no just
claim to remuneration.   But we are of opinion that he
was not entitled to charge the land to any extent for his
reimbursement."

As said in the same case: "If a husband purchase an
estate in name of his wife it shall be presumed in the

first instance to be an advancement or provision for her."
And that rule is decisive against appellee's claim for the
$70 paid for the acre of land conveyed to his wife. For
it is manifest he did not pay either that sum or the $800
with intention to become a creditor of his wife, or of
looking to her land for reimbursement. In that case the
wife died, without issue born, in about one year after the
marriage and a few weeks after her husband had advanced
and paid the money, which would have made strong
reason for a court of equity to reimburse him, but for the
fact he had received by the marriage, in right of his wife,
personalty of greater value than the sum paid for her.
In this case there is no real or apparent hardship. For
although, by reason of failure of issue of the marriage,
appellee was not entitled to curtesy, he was entitled to,
and did have and enjoy possession, control and profits of,
his wife's land during a period of about twenty-eight
years. He was insolvent at the time of the marriage, or
became so in 1865, and had no place of abode for himself
and infant children except that owned by his wife; and
at her death the appraised value of her personal property
that went into his hands as administrator was about
$4,500, after payment of all demands against her estate,
to which he is entitled. It is true counsel now contends
he was real owner of all the personalty, though caused
by him to be appraised as hers. But that is not a material
question; because if he actually owned it, the important
fact is manifested that while she derived from her own
land nothing more than subsistence, he had not only
obtained a home and support during the entire period,
but accumulated the surplus mentioned, which is more
than amount of his account against the estate. It there-

fore seems to us there is no merit in any of his demands, and especially there is no ground upon which the land in question can be subjected to pay them. There is, however, an apparent difference between his demand on account of payment of the turnpike stock and the others. But the same reasons for denying his right to subject the land to pay the others apply to that demand. For if a wife's real estate may be charged with such expenditures by the husband, there would be little protection left the inheritance against his extravagant advances and expenditures for other purposes.

As to the alleged contract little need be said. In the first place it is by no means satisfactorily proved. Second, it is clearly within the statute of frauds and not enforceable. Third, it is without consideration; for appellee was not entitled to charge for improvements and repairs on the farm, the use and enjoyment of it being full compensation. But it appears that Eliza J. Miller was by judgment of court empowered, like a *feme sole*, to use, enjoy, sell her property, make contracts, etc. And it is therefore contended she was authorized to make the contract in question with appellee. It is not, however, necessary to here determine whether the statute was intended to empower a married woman to make valid and enforceable contracts with her husband; because, conceding Mrs. Miller was, appellee would have no more right than a stranger to enforce the contract in question, nor she or her heirs less right, than if sued by a stranger, to resist its enforcement, if it be invalid and not binding, as, for the three reasons mentioned, is clearly the case.

The judgment is reversed on the appeal and affirmed on the cross-appeal.