CASE 3.—ACTION BY T. L. LANE AND OTHERS AGAINST
J. P. HOLMES AND OTHERS.—December 17, 1909.

## Holmes v. Lane, &c.

Appeal from Graves Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for plaintiffs, defendants appeal.—Affirmed.

1.  Descent and Distribution—Persons Entitled—Infant Dying
    Without Issue—Real Estate Derived from Parent.—Under Ky.
    St. 1909, Sec. 1401 (Russell's St. Sec. 3819), providing that if
    an infant dies without issue having title to real estate de-
    rived by gift, devise, or descent from one of his parents, the
    whole shall descend to that parent and his or her kindred
    as hereinbefore provided, if there is any, and, if none, then
    in like manner to the other parent and his or her kindred,
    where such an infant dies owning real estate so derived from
    one of his parents, the whole thereof shall descend to that
    parent, or his or her kindred; the words "to that parent and
    his or her kindred,  as  hereinbefore directed," referring
    merely to the order in which such kindred, if any, shall take,
    distinctly set out in section 1393 (Russell's St. Sec. 3810).
2.  Life Estates—Adverse Possession as Against Remainderman.
    —The possession of one holding an estate by the curtesy
    is not hostile or adverse to the interests of the remainderman,
    but is in fact the possession of the remainderman.
3.  Descent  and  Distribution—Persons Entitled—Brothers and
    Sisters of Whole and Half Blood.—In distributing an estate,
    a distinction is made between brothers and sisters of the
    whole blood and those of the half blood; the latter receiving
    half as much as the others only when the estate is to be ap-
    propriated among both classes, and, where there are no next
    of kin of the whole blood, those of the half blood receive the
    whole estate.

4    Life Estate—Improvements by Life Tenant—Liability of Re-
mainderman.—A life tenant cannot make improvements on
the land and charge them on the estate in remainder, or make
them a personal charge against the remainderman, especially
where he knew that his interest was limited to a life estate,
and made improvements for the comfort and convenience of
himself and family.

D. G. PARK and JOHNSON & WYMAN for appellants.

ROBBINS & THOMAS for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Af-
firming.

In April, 1869, Mary Neale Holmes, wife of Henry
C. Holmes, died, leaving her husband and an infant
son, Riley L. Holmes. At the time of her death she
was the owner in fee of a large landed estate in
Graves county, Ky. Shortly after her death, her in-
fant son, Riley L. Holmes, died. In the fall following
the death of his wife and infant son, H. C. Holmes
married one Nancy I. Jones, and there were born of
this marriage seven children. Henry Holmes, after
the death of his wife, Mary Neale Holmes, and their
infant son, continued to live upon the land until the
date of his death in July, 1908. Shortly after his
death a controversy arose between his wife who sur-
vived him, and her seven children on the one side, and
the half brothers and sisters of his first wife, Mary
Neale Holmes, on the other side, as to the owner-
ship of the lands which Mary Neale Holmes owned at
the date of her death in 1869, and upon which her hus-
band had resided from that time until the date of his
death. Being unable to adjust their differences, the
half brothers and sisters, and the children of one who
was dead, brought suit against the wife of H. C.
Holmes and her children by him for the recovery of

said land.   The defendants answered and in addition
to denying plaintifls' title, pleaded that they and H. C.
Holmes, under whom they claimed had been in the
peaceable, open, and adverse possession of said land
for more than 30 years, and they therefore relied
upon the 15 and 30 year statutes as a bar to plaintiffs'
right to recover. ˙ They further alleged that H. C.
Holmes, believing in good faith that he owned the
land, had placed   valuable   improvements thereon,
which had enhanced its value at least $3,000, and
they sought in the event the land should be adjudged
to belong to plaintiffs, to recover this sum.   In reply
issue was joined upon the affirmative defenses set up
in the answer    Proof was taken, and upon final sub-
mission a judgment was rendered in favor of plain-
tiffs, and from that judgment this appeal is prose-
cuted.

The evidence shows that Mary Neale Holmes was
the only child and heir at law of James Brand, from
whom she inherited a considerable landed estate. She
likewise inherited certain real estate from her
grandfather, and at the date of her death she and
her husband were living upon this land.   It is further
shown that at the date of their marriage, about the
year 1866, H. C. Holmes had no real estate whatever
and very little personal property.   In 1887 the court-
house in Graves county was burned and all of the pub-
lic records were lost, so that plaintiffs are unable
to file a record evidence of this title but it is establish-
ed by the testimony of many witnesses and not seri-
ously disputed by any, that her father, James Brand,
owned and lived upon this land before his death, and
his title thereto was never questioned; that his daugh-
ter, Mary Neale Holmes, inherited all of said land
from him, she being his only child and heir at law;

and that she died without having parted with her
title thereto. The evidence further shows that Riley
L. Holmes, her infant son, survived her a few months.
It is conceded that the plaintiffs, appellees, are the
half brothers and sisters, and children of such as are
dead, of Mary Neale Holmes; that her father and
mother died before she did; and that the defendants,
appellants, are the wife and children of H. C. Holmes
by his second marriage. It is further admitted that
H. C. Holmes lived upon the land in question all of
the time from the death of his wife, in 1869, until his
death in 1908, a period of more than 39 years. It is
shown that during this time he frequently said that
he owned the land in controversy as heir of his son,
Riley L. Holmes, who had inherited it from his moth-
er, Mary Neale Holmes. At one time it appears he
sought the advice of a lawyer upon this point, and
was advised by him that, while he had a curtesy in
all of said land, it was doubtful if he owned the fee.
Others to whom he talked advised him that he had
best not put lasting improvements upon the land as
it was very questionable whether or not his children
could hold it as against his first wife's relatives, and
it is shown that a short time before his death, when
giving evidence in a matter pending before the ref-
cree in bankruptcy for that district, he stated that he
owned merely a curtesy in this land.

Upon this appeal counsel for appellants have devot-
ed their attention primarily to two questions. They
content, first, that under the laws of descent and dis-
tribution when properly understood and applied, H.
C. Holmes, upon the death of his infant son by his
first wife, became the owner of at least one-half, if
not all, of the lands owned by said infant son as heir
at law of his mother; and, second, that if this is not

true, inasmuch as the said H. C. Holmes claimed the land as his own for a period of more than thirty years prior to his death the plaintiffs are barred by both the 15 and 30 year statutes, set up and relied upon in this case.  We will first take up and determine whether or not H. C. Holmes inherited any portion of this real estate from his infant son, Riley L. Holmes.

Section 1401 of the Kentucky Statutes of 1909 (Russell's St. Sec. 3819), provides that: "If an infant died without issue, having the title to real estate derived by gift, devise, or descent from one of his parents, the whole shall descend to that parent and his or her kindred as hereinbefore directed, if there is any; and if none, then in like manner to the other parent and his or her kindred; but the kindred of one shall not be so excluded by the kindred of the other parent, if the latter is more remote than the grandfather, grandmother, uncles and aunts of the intestate and their descendants."  The construction of this statute has many times been before this court, and it has uniformly been held that where an infant, owning real estate derived by gift, devise, or descent form one of his parents, died, the whole thereof descended to that parent, or his or her kindred, as provided in section 1401, supra, and the words in section 1401, "to that parent and his or her kindred as hereinbefore directed," refer merely to the order in which such kindred, if any, shall take, and this order is distinctly set out in section 1393 Ky. St. (Russell's St. Sec. 3810).  This identical question has been twice decided by this court, first in 1857 in the case of Driskell v. Hanks, 18 B. Mon. 855; and again in 1903 in the case of Weisinger v. McDonald, 116 Ky. 862, 76 S. W. 1080, 25 Ky. Law Rep. 1053.  In each of

these cases it was held that the brothers and sisters of that parent from whom the infant received the real estate were entitled upon the death of the infant to the whole thereof. On the authority of these cases, we must decide the first question adversely to the contention of appellants, and, unless the plea of the statute of limitations can be upheld, the judgment of the lower court must be affirmed. As a general proposition, the claim of a husband, holding an estate by the curtesy in the lands left by his deceased wife, would not be regarded as hostile or unfriendly to the interests of the remainderman. His possession is, in fact, the possession of the remainderman. In the case of Berry v. Hall, 11 S. W. 474, 11 Ky. Law Rep. 30, this court said that the possession of a life tenant, or of those holding under him, cannot be adverse to those in remainder during the existence of the life estate. And in the case of Davis v. Willson, 115 Ky. 639, 74 S. W. 696, 25 Ky. Law Rep. 21, where this same question was under consideration, this court, in an elaborate opinion, considered all of the authorities in this state bearing upon this question, and again held that "the life tenant's holding is not adverse to the remaindermen, but, on the contrary, is amicable to them; the possession of the life tenant being the possession of the remaindermen. At common law a remainder could not be created without a particular estate to support it; the reason being that an estate of freehold of inheritance could not be created without livery of seisin or delivery of possession, and therefore it was necessary that there should be a tenant of the particular estate to whom livery of seisin could be made, the possession of the tenant of the particular estate being the possession of the remainderman. That the life tenant does not hold adversely

to the remainderman is so elementary as hardly to need citation of authority." Smith v. Shackelford, 9 Dana, 475; Gregory v. Ford, 5 B. Mon. 475; Phillips v. Johnson, 14 B. Mon. 172; Turman v. White, Id. 560; Simmons v. McKay, 5 Bush, 31; DeCoursy's Adm'r v. Dicken, 1 Ky. Law Rep. 260; Mays v. Hannah, 4 Ky. Law Rep. 50; McIlvain v. Porter, 7 S. W. 309, 8 S. W. 705, 9 Ky. Law Rep. 899; Gudgell v. Tydings, 10 S. W. 466, 10 Ky. Law Rep.735. The authorities presented and relied upon by appellant as supporting a contrary view are not applicable, for the reason that the state of facts upon which the opinions in those cases are predicated are different from the facts under consideration. This court has never held that a life tenant's holding could be adverse to the remainderman, but, on the contrary, it has uniformly held that the possession of the life tenant is the possession of the remainderman.

Some confusion seems to have arisen over the fact that Mary Neale Holmes left no full brothers and sisters, but only half brothers and sisters, and the descendants or children of one who is dead, and because of this it is argued that, as the half blood only take half as much as the whole blood, these half brothers and sisters only being entitled to one-half of the estate, the other half should go to the wife and children of H. C. Holmes. The trouble with this argument is that it is based upon a misconception of the meaning of the statute. All of the property goes to the brothers and sisters where they are next of kin. The principle referred to and attempted to be applied here, by which the half brothers and sisters take but half as much as the full blood, is only applied in that class of cases where there are brothers and sisters of the whole blood and brothers and

sisters of the half blood, in which event those of the whole blood take twice as much as those of the half blood; but where there are no brothers and sisters of the full blood, those of the half blood take the whole. In the case of Clay v. Cousins, 1 T. B. Mon. 75, in discusing this question, this court said: "It is true Samuel W. Cousins is not the child of the father of Thomas C. Clay; but he is the child of Thomas C. Clay's mother, and is emphatically Thomas C. Clay's brother." And, again in the case of Nunnally v. Nunnally's Adm'r, 5 Ky. Law Rep. 318, this court held that: "Upon the death of an intestate without children, leaving no father or mother surviving, his estate passed to his brothers and sisters, although they were only of the half blood." It will thus be observed that this court draws a distinction between brothers and sisters of the full blood and those of the half blood only when it comes to apportioning the estate among them, and where there are no next kin of the whole blood, those of the half blood receive the whole estate.

The only remaining question is: Should the remainderman have been charged with the value of improvements placed upon this property by H. C. Holmes in his lifetime? As above stated, he was advised by his friends and attorney that it was doubtful if he held more than a life estate, or an estate by the curtesy in this land. And yet, in the possession of this knowledge, it is alleged he placed upon the property such improvements as enhanced its value in the sum of $3,000. This is not a new question. The right of the life tenant to burden the estate of the remainderman with the cost of improvements placed thereon has frequently been passed upon by our court and the rule announced in 3 Pomeroy's Equity

Jurisprudence, Sec. 1242, has been followed with ap-
proval. It is there stated that "if a tenant for life,
holding under a will, expends money in completing
permanently beneficial improvements to the property,
which had been commenced by the testator, such an
outlay is held to constitute a valid claim for reim-
bursment against the reversioner, and an equitable
lien upon the property as security for its repayment;
while outlays for altogether new and original im-
provements, being made with full knowledge of the
title, would create no such claims." The case most
directly in point is that of Henry v. Brown, 99 Ky.
13, 34 S. W. 710, 17 Ky. Law Rep. 1329, where this
court said: "It has been often and distinctly held by
this court that a tenant for life cannot lay out money
in building on the land, and charge it on the estate in
remainder, or make it a personal charge against the
remainderman. Nor does it seem to make any dif-
ference that he made the improvements upon the false
assumption that he had absolute title to the property.
* * * The circumstances of this case do not make it
a proper exception to that general rule, but rather
serve to illustrate the wisdom of it. The improve-
ments are in character and value not suited or in
proper proportion to the condition and intrinsic value
of the land, but payment for them would require a
sale of the whole unless the owners, some of whom are
married women and others infants, should raise the
money for that purpose from other sources. The
ground upon which the appellants base their claim is
that Thos. Henry, the life tenant, in good faith be-
lieved, and made the improvement in the belief, he
was absolute owner of the land. The court cannot
give credit to such alleged belief unless there appears
to have been a reasonable ground for it. In this

case there was no foundation whatever for that belief, because the statute provides plainly that, if an infant dies without issue, having title to real estate, derived by gift, devise, or descent from one of his parents, the whole shall descend to that parent and his or her kindred, and no attorney would, if consulted, have advised him that he had any other than estate for life in the land.'' Supporting this same principle, though not so directly in point are Johnson v. Stewart, 8 Ky. Law Rep. 857; Nineteenth & Jefferson Street Presbyterian Church v. Fithian, 29 S. W. 143, 16 Ky. Law Rep. 581 and Nall v. Miller, 95 Ky. 448, 25 S. W. 1106, 15 Ky. Law Rep. 862.

Every man is presumed to know the law. Appellants present no reason why Henry C. Holmes should be regarded as an exception to this rule. Had he chosen to inform himself, he must have discovered that he owned but a life estate in this land. In fact, from his own testimony given before the referee, and other facts and circumstances (despite the fact that he is alleged on several occasions to have claimed that he inherited this property from his infant son), we are driven to the conclusion that he knew that his rights in this land were limited to a life estate; and, when he made these improvements, it was not with the expectation or hope that his estate would be reimbursed for the outlay or cost thereof, but rather for the purpose of making his home as comfortable and convenient to himself and his family as his circumstances in life would permit. The chancellor did not err in likewise rejecting this claim.

Judgment affirmed.