## Althoff v. Cull, et al.

(Decided December 2, 1919.)

Appeal from Trimble Circuit Court.

1.  Waste—Actions for Waste—Proceedings.—Where land is conveyed to a wife for life with remainder to her children, the children have no right of action against the transferee of the mother to recover the land so long as she lives, but may maintain an action for waste.

2.  Deeds—Lost Deeds—One Relying Upon Must Produce It.—One who relies upon a lost deed or title bond must produce it, or account for its disappearance, and it will not be sufficient to show that the original deed has been sent to a person in a foreign state; in such case it is the duty of the one relying upon such deed to take the deposition of the person holding the deed and cause the deed to be made a part of the record.

CLAUDE B. TERRILL, W. B. MOODY and J. A. DONALDSON & SON for appellant.

S. E. DeHAVEN, G. W. PEAK, R. F. PEAK and EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In 1864, Chatham conveyed by deed of general warranty eighty-nine acres of land to Mary E. Cull and her husband John Cull, with the following proviso:

"The said John Cull to have his part lying between the buckeye and running a southwesterly course, a straight line intersecting the line up the creek, so as to include one hundred dollars' worth, at the average price paid for the land, and the remaining portion of sixteen hundred and twenty-five dollars' worth to Mary E. Cull during her natural life, and after her decease to all of her now living children, or any that she may have, and

giving unto the said Mary E. Cull the right to sell and convey the same, where in her judgment it would be for the benefit of the family by vesting the money again in land elsewhere for the use and benefit of the family as provided in this deed.''

By this deed the husband, John Cull, took the fee simple title to about five acres of the land, while the balance, eighty-four acres, passed to Mary E. Cull for life with remainder to her children then living or any she might thereafter have, with power in her to sell and convey the land whenever in her judgment it would be for the benefit of the family. In 1872 or '73, the Culls transferred the land either in fee or the life estate of the wife to Dr. Meade who immediately took possession. At that time the land was under mortgage, and this mortgage was foreclosed and the life estate of the wife and the interest of the husband sold, and the proceeds applied to the satisfaction of the mortgage. This did not interfere with the remainder interest of the children of Mary E. Cull. In the meantime the Culls had moved to a tract of land situated in Grayson county which they had obtained from Dr. Meade in consideration of a transfer to him of the eighty-nine acres in Trimble county. Meade and his successors in title have held and claimed the eighty-nine acres of land since 1872 or '73. It has been subdivided, sold and conveyed several different times until thirty acres thereof are now held and claimed by appellant, Althoff; the balance of the eighty-nine acres is claimed by other persons and other actions are pending for its recovery, and are to be determined by the result of this case, according to a stipulation found in the record.

The life tenant Mary E. Cull died in 1910, and this action was instituted in 1914 by her children and grandchildren claiming to be the owners in fee and entitled to the possession of the land from and after the death of the life tenant. Althoff is defending upon two grounds: (1) that the land was sold and conveyed by the Culls to Dr. Meade by deed duly executed in 1872 or '73, under the power granted in the deed from Chatham to the Culls and from which we above quoted, and which deed was delivered to and held by Dr. Meade until he sold and transferred the property to others and that the Cull-Meade deed which is not of record, has been lost; (2) the

uninterrupted adverse possession of the land for the statutory period.

The principal part of the evidence for appellant Althoff is directed to the establishment of the due execution and delivery of the deed from the Culls to Dr. Meade, while the evidence for appellees is largely confined to disproving the execution or existence of such a deed or title bond. Appellant admits that if such a deed had in fact existed, it was never recorded and it was not produced upon the trial or made a part of the record, although its existence was put in issue by appellees. Two or three witnesses testify to having seen and read such an instrument between the Culls and Dr. Meade, but no one of them gave any summary of the contents of the instrument and all are hazy as to its date, contents, signatures and certificate, although at least one of the witnesses claims to have seen the paper within the last eight or ten years. The paper was last seen, according to the evidence in this record, by Mary Pryor, who says she wrote to Joe Pryor at Indianapolis, and asked that the paper be sent to her for examination, and that in due course the paper referred to was received by her and exhibited to her lawyer, and after a time was returned to Joe Pryor at Indianapolis, Indiana, through the mail and later on she received a letter acknowledging its receipt. Whether Joe Pryor at Indianapolis now has and holds the paper is not disclosed, although there is slight intimation in the record that the paper was destroyed by a flood. The evidence on this point is a mere surmise or passing intimation, entirely too vague and uncertain to disturb a land title. Where the deed or bond relied on by appellant was at the time of the trial, or is now, is wholly undisclosed by this record, although appellant and his associates in title confess that they have handled the deed on different occasions since it passed from the Culls. In fact, it was in their possession the last time it was in Kentucky, and we may infer from the statements of the witnesses is now in the hands of their Privy at Indianapolis, and could have well been introduced upon the trial in the circuit court had it borne out the contention of appellant, or in fact existed. The existence of the writing is very doubtful. If it ever existed it was perhaps cancelled by agreement of the parties about 1873 or '74. Whether it existed or not is the principal question upon

which the determination of this action depends. If the Culls executed a deed to Dr. Meade under the power granted by the Chatham deed, then the title passed to Dr. Meade and his successors in title should not be disturbed; but if no such writing ever existed, was cancelled by the parties shortly after it was made, or if it only conveyed or attempted to convey the life estate of Mary Cull, then Dr. Meade and his successors in title did not take the fee but only a right to use and keep the place in the same way and manner that the life tenant could have employed the farm had she remained on it. This was the big question of fact in the case, and it was submitted to the jury who determined it against appellant. If the deed or title bond is a mere myth, or if, as contended by appellees, the title paper made by the Culls to Dr. Meade was subsequently destroyed after a compromise or cancellation of their trade, then Dr. Meade had only the life estate of Mrs. Cull and the five-acre- interest of her husband, the remainder in fee belonging to the children of Mary E. Cull who are now appellees.

Until it was proven that the deed, which was last seen in the possession of the grantor of appellant, was lost or could not be produced, parol evidence of the contents of the instrument was not admissible. Evidence which only tended to show that the deed was outside of the state was insufficient to warrant the trial court in allowing evidence concerning the contents of the writing. To justify the admission of such secondary evidence, the deed must be shown to have been lost or destroyed—until that is done, the deed, being the best evidence of its contents, alone will be competent.

So long as the life tenant of Mary E. Cull lived, Dr. Meade and his successors in title were entitled to the peaceful possession of the lands. Appellees had no cause of action until the death of Mary E. Cull in 1910, nor did the statutes of limitation begin to run against them until that time. Appellant could not have therefore advantageously pleaded adverse possession, because the statutory period had not lapsed at the time of the commencement of this action, hence the court did not err to the prejudice of appellant in declining to give an instruction upon adverse possession.

This record is not free from errors; but those appearing are of slight importance.

Three juries have sat in the consideration of this case; the first two failing to agree upon a verdict. This is no small wonder when we consider the conflicting though vague and uncertain testimony which makes up the largest part of the record. In finding for the plaintiffs, appellees here, the jury must have concluded from the evidence that the deed upon which appellant relied had no existence in fact, because it was told to find for the Culls unless it believed from the evidence that appellees' ancestors had executed and delivered the deed in question, in which event it was to find for the defendant, Althoff; whereupon the jury returned a verdict for the plaintiffs, which was to say that they did not believe that such a deed had been executed and delivered. This court never overturns a verdict of a jury unless it is flagrantly and palpably against the weight of the evidence. This not appearing, the judgment must be affirmed.

Judgment affirmed.