## Fox, et al. v. Faulkner, et al.

(Decided November 15, 1927.)

(Rehearing Denied, with Modification, February 21, 1928.)

## Appeal from Knox Circuit Court.

1.  Trusts.—Under deed conveying and selling to P. for use and bene-
    fit of C. during his natural life certain land, P. took as trustee for
    C.

2.  Trusts.—Under deed selling and conveying land to P. for use and
    benefit of C. during his natural life, and providing that, if C. should
    leave children in lawful wedlock, it should go to them, language
    of deed showed intention that real estate should be held in trust
    only for the life of C., and that, on his death, trust should termi-
    nate.

3.  Deeds.—Under deed selling and conveying land to P. for use and
    benefit of C. during his natural life, and providing that, if C.
    should leave children in lawful wedlock, it should go to them, C.
    took only an estate for life.

4.  Deeds.—Under deed selling and conveying land to P. for use and
    benefit of C. during his natural life, and providing that, if C. should
    leave children in lawful wedlock, it should go to them, where two
    children born to C. in lawful wedlock were living at time of his
    death, fee in remainder vested in them then, regardless of whether
    any estate had previously vested in them.

5.  Life Estate.—Where deed conveyed to P. for use and benefit of C.
    during his natural life, and provided that, if C. should leave chil-
    dren in lawful wedlock, it should go to them, C.'s children claim-
    ing as remaindermen under deed held title superior to remote gran-
    tees claiming under mesne conveyances to grantee of P. and C.,
    since life tenant and his trustee, at most, could have conveyed
    life estate taken by C. under Ky. Stats., section 2351.

6.  Life Estates.—One holding and owning an estate for life though he
    be in possession under deed purporting to grant fee, is not holding
    adversely to remaindermen, and statute of limitations does not
    begin to run against remaindermen until death of life tenant.

7.  Reformation of Instruments.—Action by trustee and life tenant
    named in deed against child of life tenant to have deed reformed
    so as to carry out alleged true intention of parties to it, so as to
    convey to life tenant and his trustee fee-simple title instead of
    life estate was fatally defective to accomplish end designed, where
    neither of grantors was a party to action.

8.  Improvements.—Remote grantor of defendants, and those claiming
    under him, could rely on judgment of court possessing jurisdiction
    of subject-matter reforming deed so as to show that his grantors
    had fee-simple title, for good-faith belief that by deed to them pur-
    porting to convey fee they acquired perfect title, and, having spent
    money in placing valuable and lasting improvements on land while

laboring under this good-faith belief, they were entitled to assert lien to extent that improvements had enhanced vendible value of land not to exceed their cost.

HIRAM H. OWENS for appellants.

THOMAS D. TINSLEY and JAMES D. BLACK for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

By the caption of a deed, executed August 3, 1891, John Mealer and E. J. Mealer were designated as "parties of the first part," and Mary Pursiful was designated as "party of the second part." The granting clause of the deed reads:

"The parties of the first part do hereby sell and convey to Mary Pursiful for the use and benefit of Moses A. Cottrell, during his natural life—if said Moses A. Cottrell should leave children in lawful wedlock it shall go to them, the following described lot or parcel of land," etc.

The only other portion of the deed ordinarily looked to for light on the questions here involved is found not to be enlightening. It reads:

"To have and to hold the same together with all the appurtenances thereunto belonging. The parties of the first part warrant the title to the lot hereby conveyed to the party of the second part forever."

In June, 1893, Mary Pursiful and Moses A. Cottrell, and his wife, conveyed the tract of land described in the above deed to H. H. Riddell. The deed to Riddell purported to convey the entire fee-simple title of the land in question, and it has passed by mesne conveyances to appellees, George T. Faulkner, etc., under deeds which likewise purported to convey the fee. Appellants Nina Fox and Mary Pence are the children of Moses A. Cottrell. After his death in 1923, they instituted this action to recover the tract of land from appellees, upon the theory that under the deed quoted, supra, their father took a life-estate therein, and they the fee in remainder. Appropriate pleadings made the issues on the questions hereinafter discussed.

Though Mary Pursiful was designated as party of the second part in the deed, and the qualifying word "trustee" was not added after her name to indicate that she took merely in that capacity, the language of the granting clause is such as to exclude the conclusion that she took under it in any capacity other than as trustee for Moses A. Cottrell. The case is on a par with the celebrated bear case (Prewitt v. Clayton, 5 T. B. Mon. 5), where it was said:

"A bear well painted and drawn to the life is yet the picture of a bear, although the painter may omit to write over it, 'This is the bear.'"

Furthermore, the language of the deed makes perfectly plain that it was intended that the real estate should be held in trust only for the life of Moses A. Cottrell, and that upon his death the trust should terminate. By the use of the clearest, simplest, and most explicit language possible it is made manifest that Moses A. Cottrell took under it only an estate for life; and it was his estate therein that became the corpus of the trust estate which was created for his benefit. The language of the deed does not give us room for the understanding that, in any event, or upon the happening of any contingency, would Moses A. Cottrell and his trustee take or own or have the right to dispose of anything more than the life estate created and impounded in trust for his use and benefit.

These things being true, it is impossible to reach the conclusion that, under the deed from Mary Pursiful and Moses A. Cottrell, H. H. Riddell, the remote grantor of appellees, acquired any greater estate in the property in question than the life estate created and conveyed to Mary Pursiful as trustee for the use and benefit of Moses A. Cottrell by the deed above.

The briefs filed by opposing counsel herein have at great length and with marked ability presented the opposing theories as to what was intended by this language: "If said Moses A. Cottrell should leave children in lawful wedlock it shall go to them," found in the deed above. It is earnestly and ably argued for appellees that by this peculiar language it was intended that the children of Moses A. Cottrell should take no estate under this deed until his death; and that, since it could not be known at the time the deed was executed and delivered whether Moses A. Cottrell would leave at his death chil-

dren born in lawful wedlock, the time of its vesting was postponed until that event, and the estate created was a contingent, and not a vested, one. In support of this contention we are cited to Coots v. Yewell et al., 95 Ky. 367, 25 S. W. 597, 26 S. W. 179, 16 Ky. Law Rep. 2; Baxter v. Bryan, 123 Ky. 235, 94 S. W. 633, 29 Ky. Law Rep 658; Bourbon Agricultural. Bank & Trust Co. v. Miller et al., 205 Ky. 297, 265 S. W. 790; Newton v. Southern Baptist Theological Seminary, 115 Ky. 414, 74 S. W. 180, 24 Ky. Law Rep. 2310; Alexander v. De Kermel, 81 Ky. 345; Pryor v. Castleman, 9 Ky. Law Rep. 967, 7 S. W. 892; Owen et al. v. Burks, 151 Ky. 162, 151 S. W. 369.

On the other hand, counsel for appellants, with equal earnestness and ability, present the argument that, as the oldest of the two appellants was in being at the time this deed was executed and delivered, the estate created was a vested one, and that she and any children subsequently born to Moses A. Cottrell in lawful wedlock took under the deed by virtue of the language in question a vested interest, the fee in remainder, which was liable to be defeated by their dying without issue before the death of their father, Moses A Cottrell. Many opinions from this court are cited as sustaining this theory of the case; McCoy v. Ferguson, Jr., et al., 164 Ky. 136, 175 S. W. 23, being an outstanding example.

A careful analysis of the situation here presented would seem to make it unnecessary to consider and determine whether under the peculiar language here used the estate created for the benefit of the children of Moses A. Cottrell was a vested one or a contingent one. That question is never involved or decisive of property rights under deeds or wills where it is questionable whether the interest granted is a vested one or a contingent one, except in cases where those who would have taken if in being upon the happening of the contingency are not in being when it happens. The appellants, two children born to Moses A. Cottrell in lawful wedlock, were living at the time of his death, and, under this deed, regardless of whether any estate had previously vested in them, the fee in remainder unquestionably then did vest in them. As they lived to the time when in any event they would take the fee in remainder unincumbered by any contingency, it is wholly immaterial whether it vested in them upon the delivery of the deed or upon the happening of the event. The life tenant and the trustee of the life tenant's estate could not, by uniting in a deed

of conveyance which purported to convey the fee, destroy the estate granted to appellants regardless of whether it was a vested or a contingent remainder.

The deed from the life tenant and his trustee at most could have conveyed to the remote grantor of appellees the life estate taken by Moses A. Cottrell under the deed above. See section 2351, Kentucky Statutes. As between appellants, relying upon the deed from Mealer and wife to them, and appellees, claiming under mesne conveyances through the grantee of Mary Pursiful and Moses A. Cottrell, unquestionably appellants have superior title. The life tenant under the deed above lived until 1923. This court has uniformly written that one holding and owning an estate for life, though he be in possession under a deed which purports to grant the fee, is not holding adversely to the remaindermen, and that the statute of limitations does not begin to run against remaindermen until the death of the life tenant. Holmes v. Lane, 136 Ky. 21, 123 S. W. 318; May v. Chesapeake, etc., Co., 184 Ky. 493, 212 S. W. 131; and Althoff v. Cull, 186 Ky. 120, 216 S. W. 361, are outstanding cases announcing this doctrine. Scores of other cases to the same effect are cited in those opinions. The life tenant here died in 1923. The action was instituted soon thereafter. Hence appellees' plea of limitations was unavailable.

By appropriate pleadings appellees sought to recover the amount which valuable and lasting improvements placed upon the land in controversy by them have enhanced its vendible value, and to enforce a lien upon the land to that extent, upon the theory that the improvements were placed by them thereon while in its possession under the good-faith belief that they were the owners of the fee therein. Appellants resist this contention with the counter contention that under their deed appellees took only an estate for life, and that we have uniformly written that the holder of an estate for life may not charge the remaindermen with the value of improvements. Leonard v. Williams, 220 Ky. 413, 295 S. W. 408, is the most recent utterance of this court upon these questions. It was said in that opinion:

"The principle of law has often been written and long adhered to by this court that a life tenant or a purchaser from a life tenant cannot assert a lien on the land against the remaindermen for his

improvements, although made under the false assumption that he was the owner of the perfect title.''

The opinions sustaining that doctrine are .there cited. That opinion also declares the rule that a bona fide purchaser of land who places lasting and valuable improvements upon it under the good-faith belief that he owns its perfect title may as against the true owner have a lien on it to the extent that they have enhanced its vendible value not to exceed their cost; and this court's opinions sustaining that rule are cited. It was further written in that case:

> ''These two principles and the opinions supporting them are not in conflict, but are in harmony; neither is the former in the nature of an exception to the latter. The principle and the opinions declaring it relied upon by appellee were written in cases where the one seeking to assert a lien took and held merely a life estate in the land under the instrument granting him his title, or obtained such title as he had from one who owned and held merely a life estate. In those cases there was no ground upon which the holder of the life estate could base a good-faith belief that he owned the perfect title.''

If there was nothing appearing in behalf of appellees' claim for improvements beyond the fact that they placed them upon the land in question while the owners of merely a life estate, though holding under a deed which purported to convey the fee, under the principles written in the Leonard opinion and those cited therein, their claim would necessarily fail. It appears, however, that in 1893, and before the status of the parties was changed by the attempted conveyance of the complete title by the life tenant, an action was instituted in the Knox circuit court by the trustee and life tenant against Nina Cottrell, who is now appellant Nina Fox, the only one of the children of the life tenant then living, to have the deed reformed so as to carry out the alleged true intention of the parties to it. It was alleged that it was intended to convey to Moses A. Cottrell and his trustee the fee-simple title of the land in question instead of an estate for life. That proceeding was fatally defective to accomplish the end designed, because neither of the Mealers, who were parties grantor in the deed in question, was a party to it. It appears, however, though that was true, that a judgment of the Knox circuit court was

solemnly entered adjudging that the deed in question be reformed in conformity with the prayer of the petition; and that it was intended that Moses A. Cottrell and his trustee, Mary Pursiful, should take, and that they did take, under the deed the perfect fee-simple title of the land in question. The deed from them to the remote grantor of appellees herein was made subsequent to the entry of that judgment. When the remote grantor of appellees took the deed which purported to convey to him the perfect title of the land in question, he was assured by a recorded judgment of the judicial tribunal, vested with authority so to declare by the state to which he owed allegiance, that his grantor owned and held, and could lawfully convey, the complete title of this tract of land. Could he rely upon this fact for a good-faith belief that he was purchasing the perfect title? Having spent his money in placing valuable and lasting improvements thereon under that belief, is he now entitled to a lien to the extent that the improvements have enhanced the vendible value of the land?

The same situation in principle was presented to the court in Leonard v. Williams, supra. In that case, though a judgment of the Hardin circuit court directing the sale of the fee in remainder in the tract of land involved had been declared void because the affidavit for the warning order which issued against the nonresident owner thereof was not sufficient to bring him before the court so as to divest him of his title, it was held that the judgment of the circuit court directing the sale to be made, and confirming the sale, made by its commissioner, and conveying to the purchaser the land sought to be sold, was sufficient ground upon which the purchaser might base the good-faith belief that he owned and held the perfect title of the land. So here we are forced to the conclusion that the remote grantor of appellees and those claiming under him might rely upon the entered judgment of the court possessing jurisdiction of the subject-matter that Moses A. Cottrell and his trustee, Mary Pursiful, owned the fee-simple title of the land in question for the good-faith belief that by the deed from them which purported to convey the fee they acquired perfect title, and, having spent their money in placing valuable and lasting improvements on the land while laboring under this good-faith belief, they ought in equity and good conscience to be permitted to assert a lien to the extent that the improvements have enhanced the vendible value thereof not to exceed their cost.

The chancellor erroneously concluded that appellants under the deed in question took no interest in the land thereby conveyed. Consequently, by the judgment rendered herein no adjudication was had as to the amount, if any, the vendible value of the land has been enhanced by the improvements placed thereon by appellees. The judgment herein is therefore reversed, and the cause remanded, with direction that the chancellor adjudge that appellants recover the land in question, and ascertain and adjudge and award to appellees a lien upon the land in question to the extent that its vendible value has been enhanced by lasting and valuable improvements placed upon it by them, not, however, to exceed the cost of such improvements. In that connection appellees will be charged with the reasonable rental value of the lands from April 14, 1923, the date of the expiration of their estate pur autre vie, and will be given credit by taxes attaching after that date paid by them. The chancellor will also determine whether, under the circumstances, the improvements to the cost of $3,000 last made by appellees may be considered in connection with other improvements under the rule above. The facts should be developed fully as to this item, and it would not be improper to permit the parties, if they so desire, to produce any further evidence they may touching on the issues suggested herein.

Reversed and remanded, for proceedings consistent herewith.