### Blackburn et al. v. Murphy et al.

(Decided June 3, 1932.)

J. C. CANTRELL for appellants.

W. W. BARRETT for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

A statement of the facts of this case will be found in the opinion of the former appeal, Murphy et al. v. Blackburn et al., 229 Ky. 109, 16 S. W. (2d) 771, to which reference is made therefor. A restatement of the facts, therefore, will herein now be made only so far as same appear to be needful for clearness in our consideration and disposition of the questions presented upon this second appeal.

According to the record, it appears that on May 17, 1926, Parlee Blackburn, Caldonia Varney, and Dixie May filed their petition in the Pike circuit court, against Lee Murphy, John Murphy, James Farley, and Julia Farley, as defendants, alleging that they (the plaintiffs) were each the owners of and entitled to the possession of a one twenty-seventh undivided interest in a certain described tract of some 250 acres situated in Pike county, Ky.

In their petition, they further alleged that the defendants were unlawfully and without right in the actual possession of said land, and wrongfully withholding the same from plaintiffs, claiming ownership of the whole tract. They made a part of the petition the deed of Jacob Blackburn conveying the land to Judy Murphy.

By their answer, the defendants denied the allegations of the petition and alleged they were the owners of the land under the will of Judy Murphy, the provisions of which were set out in the answer.

By agreement of parties, the cause was transferred to equity.

The plaintiffs filed a reply denying that the defendants owned any interest in the land, except such as they inherited from Judy Murphy. They further alleged that they claimed the land as the heirs at law of Judy Murphy, and that the defendants also claimed under her;

that she was the owner and in actual possession of the land at the time of her death; that the plaintiffs are the children of her daughter, Elizabeth Murphy; that Judy Murphy left nine children, and that Elizabeth Murphy, their mother, at her death inherited a one-ninth interest in the land, and that this, at their mother's death, descended to them. They further alleged that Judy Murphy was a married woman at the time of the making of her will and at the time of her death, and that the lands conveyed Judy Murphy by Blackburn and his wife were not her separate estate, and that she was without power to dispose of the lands by will, and that said will was and is invalid and void, in so far as it undertook to dispose of said lands.

Defendants filed a rejoinder in which they denied the allegations of the reply.

On November 2, 1926, an order was entered suggesting the death of James Farley, a defendant, and tendering the petition of his children and heirs at law for revival, making themselves parties and asking to file an amended answer and counterclaim to which plaintiffs objected. The court sustained their objection, to which ruling the defendants objected and excepted. On the same day the cause was submitted for final judgment.

Motion was made to set aside the order of submission; the death of James Farley being therein suggested as having occurred since the institution of the suit, which motion was overruled.

Judgment was then entered for the plaintiffs, and defendants appealed, on which appeal judgment for the plaintiffs was reversed, this court holding that the rulings of the trial court in refusing to set aside the order of submission and in refusing to allow the amended answer and counterclaim to be filed were erroneous, and directed that the lower court set aside the order of submission and allow the amended answer to be filed and also allow plaintiffs to amend their reply and make such issues as they desired upon the amended answer.

Upon the remanding of the case and its second trial, had in conformity with such rulings, the amended answer was filed as directed and its allegations controverted by agreement.

Defendants pleaded that they held the lands in question under a continuing adverse notorious possession thereof, under claimed title thereto as devisees under

the will of their mother, Judy Murphy, duly probated in August, 1873. By the terms of said will, the land conveyed Judy Murphy by Blackburn and wife in 1869, which was bought and paid for by her out of her own means and savings, was willed by her to her three sons, John Murphy, Andrew Murphy, and William Johnson Murphy, and with the further provision that the said three devisees pay to testatrix' five of her daughters therein named the sum of $60 between them. They further allege that Andrew and John Murphy at once moved upon the land and have since continuously and adversely held the same as the owners thereof under the will and as joint tenants thereof in common with the other devisee, William Johnson Murphy, who held his one-third share therein through John and Andrew Murphy, continuously claiming such interest through them in the property as devisee under the said will.

They further alleged that John Murphy did later purchase the undivided one-third interest of his brother, Andrew Murphy, and that later, in 1920, R. Lee Murphy, son of John Murphy, purchased and acquired the undivided one-third interest of William Johnson Murphy, from his children and heirs at law; that about 19— John Murphy conveyed some 128 acres of his tract of land to his daughter, Judy Farley, and her husband, James Farley, and further conveyed some like amount of it to his son Lee Murphy, all of whom as defendants claim the continuous, adverse, and notorious holding of the land since taking possession thereof as its owners under the will of Judy Murphy, which was probated in 1873.

It is further shown by the record that Andrew Murphy, the husband of Judy Murphy, left her and his home in 1863 to enter the war, and that he never thereafter returned to his home or to his wife and had not been heard from by her at the time she purchased the land in question, approximately some seven years thereafter, though it is in evidence that John Murphy heard some ten years after his departure of his then living in West Virginia with some woman, but it was unknown to him whether or not his father had secured a divorce from his mother and had married the woman.

Appellants contended that the land acquired by testatrix from the Blackburns never became, Judy Murphy's separate estate, and therefore her will be-

queathing the land to John, Andrew, and William Johnson Murphy was void, and that the said named devisees acquired no right or title thereunder, but held the same in common with the other children as the heirs at law of said testatrix.

Upon submission of this case for judgment upon its second trial, the court dismissed plaintiffs' petition and gave judgment for the defendants. Plaintiffs have appealed from this judgment.

It appears that Elizabeth Murphy, a daughter of the testatrix, Judy Murphy, and through whom appellants herein claim an interest in the property as having taken by descent her one-ninth undivided share of said land, lived practically adjoining the farm in question from the time of her mother's death in 1873, when possession and control of this farm, willed her brothers, was taken by them, and that she knew of their holding the place adversely and as their own under the will of their mother, of their making improvements upon the farm, planting orchards thereon, building fences, and making additions to the home, all such things being done by them as the owners of the place; that she stood by throughout these years, acquiescing in her brothers' possession, control, and adverse claim of owning it, without ever renouncing her mother's will or making claim to other interest in her property except that bequeathed her under the will. Plaintiffs stand in privity with or in the shoes of their mother, the said Elizabeth Murphy. Also it appears further that Elizabeth Murphy stood by, without making claim of having any interest in the land, and saw John Murphy, her brother, claiming ownership of the land under his mother's will, sell off some 130 acres of it to their niece Judy Farley and her husband, James Farley, and also without protest or claim of an interest in the land, saw Lee Murphy buy out the one-third interest of the heirs of her brother William Johnson Murphy in the land without offering a word of claim thereto.

Defendants' long-continued occupancy, control, use, and claim of ownership under the will, of this land, through a period of some fifty years for themselves and brother Johnson Murphy we are satisfied constituted such adverse and continuous holding of the land as long ago to have barred by limitations the right of the plaintiffs claiming through and under Elizabeth Murphy, their

mother, now dead some 20 years, to assert or now maintain a claim of ownership therein as joint heirs at law with appellees of their grandmother, Judy Murphy, in these devised lands, even should we concede that her probated will of 1873 was a void instrument.

In the recent case of Hargis et al. v. Flesher Petroleum Co. et al., 231 Ky. 442, 21 S. W. (2d) 818, 820, the court in discussing the question of adverse possession as running against one holding a common interest in land, said:

"When a remainderman, or his ancestor, under whom he asserts a derivative right, and with whom he is in privity by blood, undertakes to transfer title to real estate, whether by will, contract, or otherwise, but fails for any reason to make a valid or effectual conveyance, and possession is held thereunder for the statutory period, the remainderman's right to recover the land is barred. The statute starts when the possession begins under the void or ineffectual will, deed, contract, or other instrument, or act, which affords the basis of the claim and the predicate for the possession, and the bar is complete when the fixed time expires. The reason for the rule is that when the possession, which is open, notorious, and adverse, is referable to an act of, or predicable upon an attempted transfer by, the ancestor, or the owner of the remainder interest itself, it may not be reconciled with the holding of a life estate alone, but constitutes notice of an adverse claim to the title. The same reasoning underlies the rule that notice, actual or constructive, to a joint tenant or remainderman that a cotenant or life tenant is holding adversely, starts the statute of limitation against him. Com. v. Gibson, 85 Ky. 666, 4 S. W. 453, 9 Ky. Law Rep. 205; May v. Chesapeake & O. R. Co., 184 Ky. 493, 212 S. W. 131; Gilbert v. Kelly, 57 S. W. 228, 22 Ky. Law Rep. 353; Greenhill v. Biggs, 85 Ky. 156, 2 S. W. 774, 8 Ky. Law Rep. 825, 7 Am. St. Rep. 579; Godsey v. Standifer, 101 S. W. 921, 31 Ky. Law Rep. 44, 47; Holmes v. Lane, 136 Ky. 21, 123 S. W. 318; Padgett v. Decker, 145 Ky. 227, 140 S. W. 152; Mounts v. Mounts, 155 Ky. 370, 159 S. W. 818; Harrington v. Williams, 173 Ky. 578, 191 S. W. 273; Bates v. Adams, 182 Ky. 100, 206 S. W. 163; Potter v. Wallace, 185 Ky. 528, 215 S. W. 538."

Also in the even later case of Superior Oil Corp. v. Alcorn, 242 Ky. 814, 47 S. W. (2d) 973, wherein there is again, as in the Hargis case, supra, an exhaustive review made of the authorities as to the matter of the running of the statute of limitations as between joint tenants in cases of constructive notice of adverse possession by the one of jointly owned property, this court again held that if, through some act not his own, but of remainderman or some one in privity with remainderman, even though void, apparent life tenant acquires color of title incompatible with life estate and remainder estate, and takes possession thereunder and not as life tenant, and remainderman knows of possession and its nature, remainderman has a cause of action, and limitation period commences. Also see 1. R. C. L., page 741, 742; Riggs v. Dooley, 7 B. Mon. 236; Farrow's Heirs v. Edmundson, 4 B. Mon. 605, 41 Am. Dec. 250; Russell's Heirs v. Marks' Heirs, 3 Metc. 38; Iseman v. Iseman, 226 Ky. 116, 10 S. W. (2d) 613.

Upon the first appeal of this case, it was held that the statute of limitations began to run against any interest the plaintiffs as the children and heirs at law of Elizabeth Murphy might have in the land from the death of Andrew Murphy, the husband of Judy Murphy, the testatrix, about 1885. Such holding upon the first appeal becomes the law of the case upon this second appeal.

Therefore, being of the opinion from a careful consideration and review of all the evidence and pleadings of the parties herein that the defendants, or those through and under whom they claim and stand in privity, have for some forty years or since the death of the said Andrew Murphy been in the actual hostile, notorious, and continuous adverse possession of this land in question, and that the mother of the plaintiffs, Elizabeth Murphy, under and through whom they claim an interest in the land, was from such time up to the time of her death in 1912 well informed of and knew or surely had constructive notice from the manner or holding and conduct of appellees in selling the land that the holding of this land by her brothers was throughout an adverse one, as being a holding by them as its owners under the will of her mother and making notorious or public that such was their mode and manner of adverse holding of the land as the devisees and joint owners thereof, we are left without doubt as to the propriety and correctness of the

learned chancellor's thus holding that the same was adverse to the said Elizabeth Murphy and well known to her, and that therefore her children, the appellants herein, claiming through her, must needs be barred in their belated attempt to now assert their stale claim to an interest in this land.

For the reasons indicated, the judgment of the lower court is affirmed.